**Sandra J. NOYES,**

v.

**Linwood E. NOYES.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 3, 1992.

Decided Dec. 21, 1992.

Martha J. Harris, Paine, Lynch & Harris, Bangor, for plaintiff.

Lisa Lunn, Vafiades, Brountas & Kominsky, Bangor, for defendant.

(quoting *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1984)).

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Sandra Noyes appeals from a judgment of the Superior Court (Penobscot County, *Pierson, J.*) affirming a divorce judgment entered by the District Court (Lincoln, *Gunther, J.*). Sandra contends that the court's award of alimony and its order concerning attorney fees are inadequate. She also asserts that the court erred in its determination of the marital estate based on its failure to assign a proper value to the marital portion of the real estate and in its decision to assign no value to the pension of Linwood Noyes, the defendant. We agree with Sandra's assertions as to the marital estate and vacate the judgment.

The parties were married in 1982 and separated in 1990. No children were born of this marriage. Linwood, age 44 at the time of the divorce hearing, has worked at the Bowater (formerly Georgia Pacific and before that Great Northern) paper mill for twenty years. He earned $44,381.80 in 1990. In addition to his salary, he is provided with a medical insurance plan at no cost to him, a life insurance policy paid for by the company,[1] and a pension plan. Linwood's rights in the pension are vested and there was testimony from Marvin Keck, manager of compensation benefits for Georgia Pacific, that if Linwood left the company and no further contributions were made by his employer, he would receive $465.95 per month at age 65, and the lump sum value of the pension at Linwood's 65th birthday would be $12,576.50. Linwood would be entitled to a reduced benefit if he began receiving benefits at age 55. Sandra, who worked as a sales clerk prior to the marriage, did not work during the marriage, staying at home to care for the three children from the parties' prior marriages who resided with them.[2] At the time of the

divorce hearing, Sandra was employed in the dining room of a home for the elderly, earning $5.50 per hour. Sandra has a $2000 life insurance policy and no pension.[3]

During the marriage, the parties resided in Linwood's residence in Woodville. Numerous improvements were made to the property during the marriage, including the finishing of walls and ceilings, the installation of carpeting, and the purchase of a new furnace. Monthly mortgage payments of $166 were paid during the period of the marriage.

■ In the divorce judgment, the trial court awarded $2000 as lump sum alimony in order to give Sandra a "financial boost ... to help her establish herself independently." The court determined that both the pension and the Woodville residence were partly marital and partly the nonmarital property of Linwood. The court concluded that the marital portion of the pension was "indeterminable ... and of no present value." The court determined the value of the real estate to be $50,000, only $12,500 of which was marital. The court made an equal division of the marital interest in the real estate, awarding Sandra $6250. Linwood was ordered to pay $800 toward Sandra's counsel fees. Sandra's appeal to this court followed her unsuccessful appeal to the Superior Court. We review the District Court record directly. *Marquis v. Chartier*, 592 A.2d 169, 171 (Me.1991).

I.

■ We first address Sandra's contention that the court placed an erroneously low value on the marital portion of the Woodville residence, resulting in an inequitably small distribution of the marital estate to Sandra. "A divorce court's determination of what property is marital, and what is nonmarital is reviewed for clear er-

---

1. Linwood is covered under a term policy with a face value of $31,000. His daughters are the named beneficiaries.

2. Sandra has a daughter who was ten years old at the time of the marriage, and Linwood has two daughters, ages nine and fifteen at the time of the marriage.

3. At the time of the hearing, Sandra was covered by a health insurance plan provided by her employer, but it was unclear for how long the coverage would continue.

ror...." *West v. West*, 550 A.2d 1132, 1133 (Me.1988). The residence had been owned by Linwood prior to the marriage. There was testimony that during the marriage, improvements were made to the house (many of them done by Linwood), the value of which was disputed. The court found the value of the financial contribution and personal construction work to be $12,500, or one-quarter of the $50,000 found to be the total value of the residence. The court's findings coincide almost exactly with the opinion of the real estate appraiser who testified.[4] The court ordered that the $12,500 found to be the total value of the marital estate be divided in half, with $6250 going to Sandra. In addition to the improvements, however, the evidence was undisputed that monthly mortgage payments of $166 were made during the period of the marriage, and the original (1978) mortgage amount of $16,000 had been reduced to approximately $4000 at the time of the divorce hearing. The appreciable reduction in the amount of the mortgage lien, and the resultant increase in the value of the equity attributable to the mortgage payments made during the eight years of the marriage, does not appear to have been considered by the court.

 19 M.R.S.A. § 722–A(3) (1981) provides that "[a]ll property acquired ... subsequent to the marriage ... is presumed to be marital property." Although the increase in the value of real estate during the marriage not attributable to marital effort remains nonmarital property, *see* 19 M.R.S.A. § 722–A(2)(E) (1981), the increase in equity resulting from mortgage payments made during the marriage is marital property, absent a showing that the mortgage payments were made with nonmarital funds or that the parties agreed to exclude the increased equity from the marital estate. *See* 19 M.R.S.A. § 722–A(2)(D) (1981); *see also Hall v. Hall*, 462 A.2d 1179, 1181–82 (Me.1983). The failure of the court in this case to credit *any* increase in equity to the marital estate is clear error. *See West*, 550 A.2d at 1133.

## II.

 The District Court concluded that the marital portion of the pension had no value. That conclusion was based on the court's stated inability to find the present value of the pension.

 When the parties to a divorce, or one of them, has vested rights to a pension, the divorce court should find, or at least make an effort to find, the present value of that pension. *Axtell v. Axtell*, 482 A.2d 1261, 1264–65 (Me.1984). Determining the present value enables the court to assign all or part of that value to the marital estate and then to award each party a percentage of the present value of the future pension benefits. The burden of establishing the present value of a pension is not the sole responsibility of the spouse who seeks to have the pension, or a portion thereof, determined to be marital property. *Cole v. Cole*, 561 A.2d 1018, 1020 (Me. 1989). In this case, Sandra presented evidence of what Linwood would be entitled to receive as pension benefits when he retires were he to leave the company. There was no evidence concerning the pension's present value.

 There is another option available for the court's consideration, however, when the present value of a pension is unknown. That option is to award the nonemployee spouse a share of pension benefits at the time of payment. *Marquis*, 592 A.2d at 171–72; *Tarr v. Tarr*, 570 A.2d 826, 828 (Me.1990); *see also Bliss v. Bliss*, 583 A.2d 208, 209–210 (Me.1990). In this case, the court placed no value on the marital portion of Linwood's vested pension even though the value of that pension had been increasing during the entire eight years of the marriage. Moreover, the court does not appear to have considered the option of awarding Sandra a portion of future pension payments. Although the court expressed some concern about Linwood's overall health, the evidence giving rise to that concern does not justify the court's

---

**4.** The real estate appraiser hired by Sandra testified that the house was worth $50,000 and would have been worth $38,500 without the improvements made during the marriage.

failure to consider Linwood's pension as a marital asset.

Because we vacate the judgment, the District Court on remand should reconsider all economic issues. Since those issues will be considered anew, we do not address Sandra's contentions concerning alimony and attorney fees. We leave to the discretion of the District Court whether to require the presentation of further evidence.

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the District Court for further proceedings consistent with the opinion herein.

All concurring.