## TOWN OF ORRINGTON

### v.

### Rodney E. PEASE et al.

Supreme Judicial Court of Maine.

Submitted on Briefs April 12, 1995.

Decided June 28, 1995.

June A. Jackson, Edmond J. Bearor, Rudman & Winchell, Bangor, for plaintiff.

Rodney E. Pease, Orrington, pro se.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Rodney E. Pease and Constance L. Pease appeal from the judgment entered in the Superior Court (Penobscot County, *Mills, J.*) affirming the judgment of the District Court (Bangor, *Russell, J.*) for the Town of Orrington on its land use citation and complaint against the Peases for their violation of 30–A M.R.S.A. § 4406 (Pamph.1994)[1] and their failure to obtain a certificate of occupancy for a mobile home in violation of Article V, section 4, of the Town's zoning ordinance.[2] The Peases contend that the trial court erred (1) in determining they had violated section 4406; (2) in considering a violation of the zoning ordinance not alleged in the Town's complaint; and (3) in awarding the Town its attorney fees and costs. We affirm the judgment.

The record reveals the following: On June 15, 1990, Thomas S. McLean, the owner of Lot 90, located in Orrington, conveyed one-half of the lot, described as Lot 90C, to Rodney E. Pease and the remainder, described as Lot 90, to David Giffard. On June 25, 1990, Rodney Pease, without prior approval of the Town, conveyed one-half of Lot 90C, described as Lot 90D to Richard and Robin Reed. Without prior approval of the Town, on December 7, 1990, Giffard conveyed a portion of Lot 90, described as Lot 90E, to Rodney and Constance Pease as joint tenants. Finally, on January 28, 1991, Giffard conveyed his remaining interest in Lot 90 to Rodney and Constance Pease as joint tenants. Within a period of approximately seven months the original Lot 90 had been divided into four parcels with the Reeds owning Lot 90D, Rodney Pease owning Lot 90C

1. 30–A M.R.S.A. § 4406(1) (Pamph.1994) provides in pertinent part that

    [n]o person may sell, lease, develop, build upon or convey for consideration, or offer or agree to sell, lease, develop, build upon or convey for consideration any land or dwelling unit in a subdivision that has not been approved by the municipal reviewing authority of the municipality....

    Section 4406(1)(D) provides that any person who creates an unapproved subdivision shall be penalized in accordance with section 4452. That section sets forth the civil penalties, including correction and mitigation of the violation, and requires an award of reasonable attorney fees and costs to the municipality if it prevails in court unless the court finds that special circumstances make the award unjust.

2. Article V, section 4 of the Town's zoning ordinance provides that a certificate of occupancy issued by the Building Inspector is required in advance of the use of any lot or change of the use of the lot or use of a new building or change in use of any existing building.

and Rodney and Constance Pease owning Lots 90 and 90E.

On July 29, 1991, Rodney Pease executed a release deed conveying Lot 90C to the Reeds and reciting in pertinent part:

This conveyance is made on the following expressed condition and restriction:

. . . .

Upon the Planning Board for the Town of Orrington approving the premises ... for subdivision approval, Richard L. Reed and Robin L. Reed shall reconvey the within described premises to Rodney E. Pease without any further consideration so that full title in the within described premises shall vest in Rodney E. Pease as through [sic] this deed had never been given.

In the event the subdivision is not given by the Town of Orrington as anticipated by the parties, Richard L. Reed and Robin L. Reed agree to reconvey the subject premises to Rodney E. Pease without further consideration as soon as said subdivision approval is no longer required.

On August 27, 1991, the Peases executed a mortgage deed to Peoples Heritage Bank on the northern one-half of Lot 90. The January 1991 application of the Peases for a subdivision permit for Lots 90, 90C, 90D and 90E was denied by the Town in October 1991 on the ground that an illegal subdivision had been created by the division of the original Lot 90 in violation of 30-A M.R.S.A. § 4401(4).[3]

Although on December 20, 1991, after learning the subdivision was illegal, the Code Enforcement Officer of the Town had revoked the building permit issued on December 5, 1991 to the Peases on their November 1991 application to install a mobile home on the southern one-half of Lot 90, installation proceeded and the mobile home was occupied. No application was made for a certificate of occupancy and none was issued by the Building Inspector.

■ On July 16, 1992, the Town filed the present land use citation and complaint against the Peases seeking a civil penalty of $100 a day beginning January 1, 1992, for the alleged subdivision violations, an order directing the removal of the mobile home and concrete pad located on Lot 90 and its attorney fees and costs. After a hearing, the court found, *inter alia*, that the Peases had violated the subdivision law and failed to obtain a certificate of occupancy for the mobile home on their property. It ordered the Peases to pay a $5,000 fine but provided that if the Peases complied with certain measures specified by the court to correct the illegal subdivision and applied for a certificate of occupancy for the mobile home all but $1,500 of the fine would be suspended, and a judgment in favor of the Town was entered accordingly. Thereafter, the Town filed an application for its attorney fees and costs. After a hearing, at which the Peases objected that the Town's request was untimely and that the award of attorney fees and costs would place an unjust burden on them, the court approved the Town's request in the amount of $3,622.26. After a hearing on their appeal, the Superior Court affirmed the judgment of the District Court, and the Peases appeal. When, as here, the appeal to this Court follows an unsuccessful appeal to the Superior Court, we review directly the record developed before the District Court. *Noyes v. Noyes*, 617 A.2d 1036, 1037 (Me. 1992).

### The Unauthorized Subdivisions

■ We review the trial court's construction of a statutory scheme as a matter of law. *Spiller v. State*, 627 A.2d 513, 515 (Me.1993). As an initial matter, we agree with the trial court that there is no evidence in the record to suggest that Lot 90 was ever more than one lot before McLean made the initial division of Lot 90 into two parcels. Accordingly, the trial court properly found

**3.** 30-A M.R.S.A. § 4401(4) defines a subdivision as "the division of a tract or parcel of land into 3 or more lots within any 5-year period that begins on or after September 23, 1971 ... whether the division is accomplished by sale, lease, development, buildings or otherwise." Further, section 4401(4)(A) provides in pertinent part:

In determining whether a tract or parcel of land is divided into 3 or more lots, the first dividing of the tract or parcel is considered to create the first 2 lots and the next dividing of either of these first 2 lots, by whomever accomplished, is considered to create a 3rd lot. . . .

that Rodney Pease's division of Lot 90C and conveyance of Lot 90D to the Reeds constituted the creation of a third lot within a 5–year period and, pursuant to the subdivision law, required municipal approval. The second illegal subdivision occurred when Giffard subdivided Lot 90 and conveyed Lot 90E to the Peases in joint tenancy. Although conveyances to abutting landowners are exempt from the definition of a subdivision pursuant to section 4401(4)(D), the trial court properly found that because Lot 90C was owned by Rodney Pease alone, the conveyance of Lot 90E to the Peases as joint tenants was not a conveyance to an abutting landowner.

The third illegal subdivision occurred when the Peases granted a mortgage on one-half of Lot 90 to Peoples Heritage Bank. As we noted in *Planning Bd. of Town of Naples v. Michaud,* 444 A.2d 40, 42 (Me.1982) (with reference to a subdivision as defined in 30 M.R.S.A. § 4956, presently 30–A M.R.S.A. § 4401. *See* P.L.1989, ch. 104, pt. A, subchapter IV), "when the statute speaks of a 'division,' it contemplates the splitting off of an interest in land and the creation, by means of one of the various disposition modes recited in § 4956 ['sale, lease, development, buildings or otherwise'], of an interest in another." (quoting *Town of Arundel v. Swain,* 374 A.2d 317, 320 (Me.1977)). By mortgaging a portion of Lot 90, thereby entitling the bank to foreclose in the event of a default, the Peases effectively divided their interest in that lot.

We conclude that the trial court properly assessed civil penalties for the illegal subdivisions and properly ordered the Peases to correct the violations pursuant to 30–A M.R.S.A. § 4452(3) (Pamph.1994).

### The Certificate of Occupancy

The Peases do not challenge the trial court's finding that no certificate of occupancy had ever been issued for the mobile home constructed on Lot 90 or that the Town's zoning ordinance required that a certificate of occupancy be obtained before the use of a new building. Rather, they first contend that because in its citation and complaint the Town did not allege the violation, the court erred in addressing that claim. Further,

they contend that because it was the responsibility of Ruben Albert, the present occupant of the mobile home, to obtain a certificate of occupancy, the trial court erred in ordering them to apply for the certificate from the Town. We disagree.

■ Although in its citation and complaint the Town did not specifically charge the Peases with violating Article V, section 4, of the zoning ordinance by failing to secure a certificate of occupancy of the mobile home, at the trial of this matter the Town, without objection by the Peases, introduced evidence of that requirement and that there had been no application for or issuance of such a certificate. Accordingly, that issue was properly tried by consent. *See* M.R.Civ.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.") The trial court properly required the Peases, as the title owners of the property, to file for a certificate of occupancy.

### The Award of Attorney Fees

■ The Peases finally contend that because the Town did not file its application until over 90 days from the entry of judgment, it should be foreclosed from obtaining its attorney fees and costs. The Town requested attorney fees and costs in its citation and complaint. Accordingly, the Town preserved its right to file its application after the trial court entered a judgment in its favor. *McCain Foods, Inc. v. Gervais,* 657 A.2d 782, 784 (Me.1995).

The entry is:

Judgment affirmed.

All concurring.