**Sandra J. NOYES**

v.

**Linwood NOYES.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 28, 1995.

Decided July 31, 1995.

**922**

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for plaintiff.

Marvin H. Glazier, Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Sandra J. Noyes appeals from a judgment entered in the Superior Court (Penobscot County, *Mills, J.*) affirming in all major respects the divorce judgment entered in the District Court (Lincoln, *Gunther, J.*). Because we agree with Sandra's contention that the court erred in its determination of alimony and marital property, we vacate the judgment and remand for further proceedings.

A divorce judgment was first issued in this case in 1991. The trial court found the marital interest in the real estate to be one-fourth of the property's total $50,000 value ($12,-500), and awarded Sandra one-half of that amount ($6,250). It concluded that the marital portion of Linwood Noyes's pension was indeterminable and had no present value, and awarded Sandra no interest in the pension. Sandra was awarded lump sum alimony of $2000, and $800 in attorney fees. She also received $1150 to compensate her for the excess value of personal property awarded to Linwood. Sandra appealed.

On appeal, we concluded that the trial court erred in not considering the amount the mortgage was reduced by marital funds in determining the value it assigned to the marital portion of the real estate, and in its decision to assign no value to Linwood's pension. We did not address the issues of alimony and attorney fees, and left it to the trial

court's discretion whether to take further evidence. *Noyes v. Noyes,* 617 A.2d 1036, 1038–39 (Me.1992).

In the June 1993 divorce judgment, issued after a new hearing was held following remand, Linwood was ordered to pay Sandra "lump sum alimony in the amount of $2000," one-half of her attorney fees ($2727.04), $850 to compensate her for the unequal division of personal property, $11,250 as compensation for her portion of the marital interest in the real estate, and a portion of Linwood's pension. The Superior Court sustained Sandra's appeal regarding an additional payment to compensate her for the excess value of personal property awarded to Linwood, and denied her appeal in all other respects. Sandra's appeal to this Court followed. Because the Superior Court acted in an appellate capacity, we review the trial court's judgment directly. *Quin v. Quinn,* 641 A.2d 180, 181 (Me.1994).

**I.**

 Sandra contends that in view of the disparity in the earning capacities of the parties, the award of $2000 total alimony is inadequate in this case. Issues such as an alimony award are addressed to the sound discretion of the trial court and are reviewed for an abuse of that discretion. *Pongonis v. Pongonis,* 606 A.2d 1055, 1058 (Me.1992). We will not disturb the trial court's decision as to alimony unless it violates " 'some positive rule of law or has reached a result which is plainly and unmistakably an injustice.' " *Quin,* 641 A.2d at 181 (quoting *Terison v. Terison,* 600 A.2d 1123, 1124 (Me.1992)).

 The primary purpose of alimony is to provide " 'maintenance and support' " for the future needs of the payee spouse. *Harding v. Murray,* 623 A.2d 172, 176 (Me.1993) (quoting *Skelton v. Skelton,* 490 A.2d 1204, 1207 (Me.1985)). To determine an alimony award, the trial court must consider the factors enunciated in 19 M.R.S.A. § 721 (Supp. 1994).[1] *Quin,* 641 A.2d at 181; *Pongonis,*

---

1. Section 721 provides that the court consider the following factors when determining an alimony award:
 A. The length of the marriage;
 B. The ability of each party to pay;

 C. The age of each party;
 D. The employment history and employment potential of each party;
 E. The income history and income potential of each party;

606 A.2d at 1059. Even though the court found that Sandra's earning capacity was not adversely affected by the considerable time she spent during the marriage caring for Linwood's children and her own child, there is a substantial difference in the amount each is presently able to earn.

Both parties are in their late forties. Linwood earns over $15 per hour at Great Northern Paper Company. Although he has earned as much as $44,000 as a result of extensive overtime, his gross income in 1992 was $39,000. He receives medical and life insurance benefits from his employer, and is vested in a noncontributory pension plan. At the age of 65, he will be entitled to receive a lump sum payment of $12,576.56 or payments of $465.95 per month. His monthly expenses at the time of the second hearing totaled $717. He had approximately $800 in his checking account and two savings accounts. He will need to take out a loan in order to pay Sandra the cash value of her portion of the marital property, which he estimates will require monthly loan payments of $160.

■ Sandra earns $5.60 per hour as a dietary aide in a boarding home. In 1992, she earned $11,723 working forty hours per week. After deductions, including costs of health insurance, she takes home $680 per month. She has no retirement benefits. She presented evidence that her monthly expenses total $1118, approximately $500 more than her income. She also had a small amount of money in a bank account from her half of the couple's savings account and tax refund. Sandra has no way to cover the disparity between her income and expenses other than by expending her marital assets. An alimony award premised on the assumption that the spouse will invade her portion of the marital assets is insufficient. *Bonnevie*

v. *Bonnevie*, 611 A.2d 94, 95 (Me.1992) (court's award of alimony of $100 per week until marital home was sold was insufficient where husband earned $45,000 per year, wife could expect to earn no more than $12,500 per year, parties had been married for twenty-eight years, and marital property, including one-half of present value of husband's pension rights, was divided equally). "[I]t is inequitable to force a spouse to invade that spouse's marital assets for the benefit of the other. Such a concept defeats the presumably careful and equitable distribution of marital property." *Id.*

Although the court found that the standard of living of the parties was "lower than the family income would suggest," Sandra is unable to maintain that standard on her earnings alone. Nor does she appear to have much prospect of substantially improving the imbalance between her living expenses and income. Linwood's earnings, on the other hand, substantially exceed his expenses. While this is not the kind of case that calls for a very substantial alimony award, the $2000 awarded to Sandra as the total alimony payment is inadequate given the disparity in earning power between Linwood and Sandra and Sandra's demonstrated needs. Because the award works a plain and unmistakable injustice, the judgment must be vacated. *See Bonnevie*, 611 A.2d at 95; *Cole v. Cole*, 561 A.2d 1018, 1021 (Me.1989).

**II.**

■ In determining the value of the marital property to be divided, including the real estate and the marital portion of Linwood's pension, the court found that the marriage ended *de facto* at the time of the initial divorce judgment on April 9, 1991, and declined to find any accumulation of marital

**F.** The education and training of each party;
**G.** The provisions for retirement and health insurance benefits of each party;
**H.** The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
**I.** The health and disabilities of each party;
**J.** The tax consequences of an alimony award;
**K.** The contributions of either party as a homemaker;

**L.** The contributions of either party to the education or earning potential of the other party;
**M.** Economic misconduct by either party resulting in the diminution of marital property or income;
**N.** The standard of living of the parties during the marriage; and
**O.** Any other factors the court considers appropriate.

value during the two years between the initial judgment and the second hearing.[2] The court's award to Sandra of $11,250 as compensation for her interest in the value of the marital portion of the real estate was based on a determination of the net value of the marital portion of the real estate as it was in 1992, i.e., $26,500, less a $4000 mortgage, or $22,500. The pension award was also calculated on the basis of a nine-year, as opposed to an eleven-year marriage.

Sandra contends that the marriage continued after the 1991 hearing, and that the marital value of the real estate in June 1993, at the time of the second divorce hearing, was $26,500 because the $4000 mortgage outstanding at the time of the first divorce hearing had been paid. Similarly, she contends that her award from the pension should be larger because the court incorrectly used nine years, rather than eleven years as the length of the marriage in the formula it used to divide the pension. We agree.

The marriage was not finally dissolved by the 1991 divorce judgment. Sandra's successful appeal resulted in that judgment being vacated. Although the parties were not living together, the marriage nevertheless continued during the two-year period between divorce hearings. As we pointed out in the first appeal, the increase in the value of the property resulting from the mortgage payments made during the marriage are part of the marital estate. Of course, the fact that Linwood alone made the payments to reduce the mortgage may be considered as a factor in how the marital property is divided. *See* 19 M.R.S.A. § 722–A(1) (1981); *Noyes,* 617 A.2d at 1038; *West v. West,* 550 A.2d 1132, 1134 (Me.1988). Similarly, the increase in the value of Linwood's pension occurring during the marriage has to be considered marital property. *Noyes,* 617 A.2d at 1038; 19 M.R.S.A. § 722–A(3) (1981). While the formula used by the trial court to determine the proportion of the pension that Sandra is entitled to receive as marital property is in

principle fair and equitable, the fraction used should take into account the entire duration of the marriage.

We vacate the judgment and remand to the District Court, for the reconsideration of all economic issues. Accordingly, we do not address Sandra's contention that the attorney fee award is inadequate.

*Judgment vacated. Remanded to the Superior Court for remand to the District Court for further proceedings consistent with the opinion herein.*

All concurring.

---

2. Prior to the start of the second hearing, the court stated:

[I]in terms of evaluating the just distribution of property under Section 722(A), I would cancel the marital accumulation of interest as of the date of the first divorce—of the divorce judgment which has been reversed, but I'm not going to allow an accumulation of marital interest during this what I consider post divorce period.

Sandra objected to this determination.