Peter SEWALL

v.

Louise SNOOK.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 15, 1996.
Decided Dec. 17, 1996.

Frank M. Underkuffler, Farmington, for Plaintiff.

Edward S. David, Joyce, Dumas, David and Hanstein, P.A., Farmington, for Defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

RUDMAN, Justice.

Louise Snook and Peter Sewall both appeal from the divorce judgment entered in the Superior Court (Franklin County, *Mills, J.*). On appeal, Louise Snook contends that the trial court erred in denying her any alimony. On cross-appeal, Peter Sewall contends that the trial court abused its discretion in not awarding him a specific visitation schedule with his two daughters. Because we agree that the trial court erred with respect to alimony, we vacate the judgment as it relates to alimony and division of marital property, but affirm the judgment as it relates to visitation.

Louise and Peter began living together in 1976, married in 1980 and have two minor daughters by that marriage. At the time of the divorce hearing, Louise was forty-one years old and Peter was forty-six years old. Both parties were in good health and neither had retirement funds, special education, or training. Peter and Louise had both been employed throughout the marriage and both had worked about six months out of the year. Peter's gross income from employment was $38,737. His employer provided, at no additional cost to Peter, housing, food and the use of a vehicle. Louise's gross income from employment was $11,870. Louise received no additional benefits from her employer except reduced price ski passes and classes.

After a two-day hearing, the court granted the divorce and ordered the parties to share parental rights and responsibilities regarding the minor children. Primary physical residence was awarded to Louise, and Peter was granted the right to visit with and be visited by the minor children at all reasonable times. Peter was ordered to pay child support to Louise in the amount of $149.25 per week until the parties' youngest daughter turned twelve, at which time the child support pay-

ment would increase to $165 per week.[1] Additionally, Louise was awarded $99,671.57 in marital property, including the family home. Peter received $73,840.83 in marital property, including 160 of the parties' 220 acres of land. The judgment also ordered that neither party will pay alimony to the other party.

On entry of the divorce judgment, Louise filed a combined motion pursuant to M.R.Civ.P. 52(a) and 59 for specific findings of fact and conclusions of law with respect to alimony and for reconsideration and amendment of the divorce judgment. The court denied the motion without comment.

### I. Alimony

Louise contends that because of her financial need, the trial court erred when it failed to award her any alimony.

"Issues arising out of a divorce action, such as property division, alimony, custody and child support, are within the court's sound discretion, and the judgment of the court on such matters is entitled to substantial deference." *Knight v. Knight,* 680 A.2d 1035, 1037 (Me.1996) (citations omitted). Absent a violation of some positive rule of law or unless the judgment has reached a result that is plainly and unmistakably an injustice, we will not disturb the trial court's decision regarding alimony. *Noyes v. Noyes,* 662 A.2d 921, 922 (Me.1995) (citations omitted).

"The primary purpose of alimony is to provide 'maintenance and support' for the future needs of the payee spouse." *Noyes,* 662 A.2d at 922. (quoting *Harding v. Murray,* 623 A.2d 172, 176 (Me.1993); *Skelton v. Skelton,* 490 A.2d 1204, 1207 (Me.1985)). To determine an alimony award, the trial court must consider the factors in 19 M.R.S.A. § 721 (Supp.1996).[2] *Id.*

---

1. The youngest daughter turned twelve on June 26, 1996.

2. Section 721 provides that the court must consider the following factors when determining an award of alimony:
 A. The length of the marriage;
 B. The ability of each party to pay;
 C. The age of each party;
 D. The employment history and employment potential of each party;

 E. The income history and income potential of each party;
 F. The education and training of each party;
 G. The provisions for retirement and health insurance benefits of each party;
 H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
 I. The health and disabilities of each party;
 J. The tax consequences of an alimony award;

Despite the fact that a larger share of the marital assets was awarded to Louise, and despite the court's consideration of the statutory factors in section 721, the record before us reflects that Louise cannot currently meet her living expenses on her income alone. We have previously stated that an alimony award is insufficient if it is premised on the assumption that a spouse will invade her portion of marital assets. *Noyes,* 662 A.2d at 923 (citing *Bonnevie v. Bonnevie,* 611 A.2d 94, 95 (Me.1992)).

At the time of the divorce, Louise's net income from employment was $10,243 and she was to receive an additional $7,761 from Peter in the form of child support for a total annual income of $18,004. Louise submitted a statement to the trial court estimating her annual expenses at $30,135. On this record, Louise's reported monthly expenses exceed her monthly income by $1,011.

At trial Louise testified that she has had to take money from her savings account to meet ordinary living expenses. Although Peter offered testimony that many of Louise's expenses are inflated, the judgment is silent on the issue of whether the court found that Louise has the ability to meet her living expenses without any award of either transitional or permanent alimony.

 "[T]he divorce court has a duty to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." *Powell v. Powell,* 645 A.2d 622, 623 (Me. 1994). We will assume that the court found all the facts necessary to support its decision when neither party has filed a motion for specific findings of fact and conclusions of law. *Id.* at 623–24 (citing *Bayley v. Bayley,* 602 A.2d 1152, 1154 (Me.1992); *Murray v. Murray,* 529 A.2d 1366, 1368 n. 1 (Me.1987)). Louise filed a motion for specific findings of fact and conclusions of law on the issue of alimony. The trial court refused to grant her request; therefore, we do not assume that the divorce court made the necessary findings to support its decision. *See Powell,* 645 A.2d at 624 n. 3.

 We acknowledge the trial court's superior position in assessing the credibility of the witnesses and recognize that the court could reasonably have found that Louise has the current ability to support herself in light of her work history and general earning capacity. Nevertheless, any attempt to discern the trial court's reasoning with respect to the disparity between Louise's expenses and income would be purely speculative.[3] Since the record before us reflects that Louise must resort to expending her portion of the marital assets to meet her expenses, we vacate the judgment as it relates to alimony. In light of the court's reexamination of the issue of alimony, it is appropriate that the court reexamine the division of marital property to ensure that the overall financial result of the divorce is equitable. *See Dunning v. Dunning,* 495 A.2d 821, 824 (Me.1985).

## II. Visitation

Peter contends that the trial court's denial of a specific visitation schedule with his daughters was an abuse of the court's discretion. He argues that a specified visitation

---

K. The contributions of either party as homemaker;

L. The contributions of either party to the education or earning potential of the other party;

M. Economic misconduct by either party resulting in the diminution of marital property or income;

N. The standard of living of the parties during the marriage; and

O. Any other factors the court considers appropriate.

3. This is not the case of *Deditch v. Deditch,* 584 A.2d 649 (Me.1990), where we affirmed the divorce court's failure to award alimony beyond the provision of health insurance when the court found that the wife would have the means of supporting herself if she increased rents from certain rental properties. The wife had presented evidence that her monthly expenses exceeded her monthly income, but her evidence was rebutted by the husband's expert real estate appraiser who testified that the wife was renting the income properties at below-market rates. The court found that the husband's expert was credible and the wife had produced insufficient evidence of her expenses.

Nor is this the case of *Cushman v. Cushman,* 495 A.2d 330 (Me.1985), where we affirmed the divorce court's failure to award alimony when the wife left the marriage, which was of short duration, with substantial assets and the ability to support herself as a counselor and antique dealer.

schedule is the method best suited to commencing and facilitating the significant adjustment that his daughters face as a result of the divorce.

■ "The court has broad discretion in determining what is in a child's best interests in a custody case, and its judgment, when properly exercised on the basis of the evidence presented, is entitled to very substantial deference." *Lee v. Lee,* 595 A.2d 408, 412 (Me.1991). In determining the best interest of the children, the court must consider the factors enumerated in 19 M.R.S.A. § 752(5) (Supp.1996).[4] *Id.*

■ With respect to visitation rights, the divorce judgment states:

> The plaintiff seeks a specific visitation schedule that will require his children to visit him in his home, which he shares with his girlfriend. He lives at his place of employment on Big Island, which is one hour's travel time by car and boat from the parties' home. The children are very involved in sports and other activities, including skiing. The record does not reflect that there are other children on Big Island or what activities are available to the minor children there. The children would be unable to pursue their usual sports and other activities while on Big Island.
>
> The children are uncomfortable when they are with the plaintiff's girlfriend and, apparently, blame her for their parents' separation. The children enjoy visiting with the plaintiff as long as his girlfriend is not present and the defendant has helped to arrange such visitation. These children will have significant adjustments to make as a result of the parties' divorce. It is not in their best interests to include in those adjustments forced visitation at a place remote from their friends and activities and with people around [with] whom the children are not comfortable.
>
> The plaintiff will have the right to visit with and be visited by the minor children at all reasonable times.

The court's findings with respect to visitation are well supported by the record. In fact, Peter does not dispute the findings of the trial court: he simply disagrees with its result. Finding no abuse of the court's considerable discretion, we affirm the judgment as it pertains to visitation.

The entry is:

Judgment vacated as it applies to alimony and division of marital property; affirmed as it applies to visitation. Remanded for further proceedings consistent with the opinion herein.

All concurring,

---

4. Section 752(5) requires the court, in making an award of parental rights and responsibilities with respect to minor children, to consider the following factors:

**A.** The age of the child;
**B.** The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;
**C.** The preference of the child, if old enough to express a meaningful preference;
**D.** The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;
**E.** The stability of any proposed living arrangements for the child;
**F.** The motivation of the parties involved and their capacities to give the child love, affection and guidance;
**G.** The child's adjustment to the child's present home, school and community;
**H.** The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
**I.** The capacity of each parent to cooperate or to learn to cooperate in child care;
**J.** Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;
**K.** The effect on the child if one parent has sole authority over the child's upbringing;
**K–1.** The existence of domestic abuse between the parents, in the past or currently, and how the abuse affects:
(1) The child emotionally; and
(2) The safety of the child;
**K–2.** The existence of any history of child abuse by a parent; and
**L.** All other factors having a reasonable bearing on the physical and psychological well-being of the child.