2008 ME 17

**Brenda R. BROWN**

v.

**Roger HABRLE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 27, 2007.
Decided: Jan. 29, 2008.

Barbara A. Cardone, Esq., Barbara A. Cardone, PA, Bangor, ME, for appellant.

Richard L. Currier, Esq., Currier & Trask, P.A., Presque Isle, ME, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶ 1] Roger L. Habrle appeals from a divorce judgment dissolving his marriage to Brenda R. Brown entered in the District Court (Houlton, *O'Mara, J.*) following a remand from this Court. He asserts that the court erred in adopting the findings contained in the referee's report regarding the valuation and division of mari-

tal property, in determining the amount of spousal support, and in failing to award attorney fees. We are unpersuaded by Habrle's contentions and affirm the judgment.

## I. BACKGROUND

[¶ 2] The parties were married on May 14, 1988. Prior to the parties' marriage, Habrle was employed at Champion International in Bucksport, as a manufacturing manager. Brown was the sole shareholder and chief executive officer of Maple Grove Nursing Home, Inc., which owned and operated Madigan Estates, a nursing home; the general managing partner, administrator, and two-percent owner of Military Street Associates; the sole owner and operator of Greenland Cove Campground; owner and operator of the ACAP building, an office building; and the owner and project administrator of Lee Apartments, which was near completion at the time the parties were married. Brown also entered the marriage owning her mother's residence on Hogan Street in Houlton and her own residence on Madigan Street in Houlton, which, at the time, was not subject to any encumbrances.

[¶ 3] Habrle did not own any real estate except for his house, which he sold in 1989 for $88,645.76. He had preexisting financial obligations from his previous marriage, including child support and alimony.

[¶ 4] Prior to the parties' marriage, they agreed that Habrle would give up his position at Champion International, move to Houlton, and take a position assisting in the administration of Madigan Estates, the nursing home owned and operated by Brown, at a salary of $38,000 per year. After two years, Habrle was able to get his nursing home administrator's license, and he became the assistant administrator of Madigan Estates. This assistant administrator position had not existed prior to

Habrle's employment and was not filled after Habrle left.

[¶ 5] Along with Habrle's salary as an assistant administrator, he was also compensated for his work as caretaker of Lee Apartments, for which he received almost $200,000 over the course of the marriage. In 1996 or 1997, Habrle also began managing Greenland Cove Campground. Brown manages Lee Apartments, the ACAP building, and Madigan Estates. Habrle did not invest any of his own money in any of the business enterprises, except for one time when he was not reimbursed for store supplies for the campground. Brown, on the other hand, invested her money into the business enterprises. Throughout the marriage, the parties kept their finances separate, but Brown paid for all the living expenses of the couple.

[¶ 6] Habrle was terminated from his employment as assistant administrator of the nursing home in September 2001, and thereafter did not participate in any of the business entities. As of the date of Habrle's testimony, he was still not employed. He has limited his job search mostly to the local area because he wants to remain in Houlton. He did volunteer at a church doing painting and maintenance for about ten hours per week.

[¶ 7] Brown filed for divorce on September 18, 2001. The parties agreed to submit the case to a referee pursuant to M.R. Civ. P. 53. The referee held a three-day hearing in January of 2005. At the hearing, the parties presented testimony regarding the value of the real estate and property owned by them. Specifically, the referee heard testimony from two experts, Stephanie Rice and Norman Gosline.

[¶ 8] The referee filed his report on September 6, 2005. Habrle made no objection to the referee's report, and the terms of the referee's report were incorporated into the divorce judgment. Habrle appealed the District Court's denial of his

motion to vacate the divorce judgment, contending that his failure to file a timely objection to the referee's report was attributable to the fact that he was not notified of the referee's filing of the report with the court. We vacated the judgment and remanded the case to the District Court. *Brown v. Habrle,* 2006 ME 115, 908 A.2d 640. Habrle filed his objections to the referee's report following the remand. After a hearing on Habrle's objections, the District Court denied all but one of those objections, and again incorporated the referee's report into the judgment. The only change made by the District Court after remand was to strike the language in the divorce judgment stating that spousal support could not be increased.

[¶ 9] The divorce judgment set aside to Habrle $310,767 in nonmarital property; $610,140 in marital property; awarded transitional support to Habrle in the amount of $100 per week from October 19, 2001, to July 31, 2005; and awarded general support in the amount of $24,000 per year for four years. The judgment set aside to Brown $2,638,380 in nonmarital property and $1,846,644 in marital property. Habrle filed this appeal.

## II. DISCUSSION

### A. Valuation of Maple Grove Nursing Home, Inc. and Lee Apartments

 [¶ 10] Habrle disputes the referee's valuation of Maple Grove Nursing Home and Lee Apartments. "When a trial court accepts a report of a referee, the findings of the referee become the trial court's findings, and we review those findings directly." *Raisen v. Raisen,* 2006 ME 49, ¶ 6, 896 A.2d 268, 270 (quoting *Warren v. Warren,* 2005 ME 9, ¶ 19, 866 A.2d 97, 101). We therefore review the referee's determination of the value of marital property for clear error. *See Robinson v. Robinson,* 2000 ME 101, ¶ 12, 751 A.2d 457, 460. We will not disturb an estimate of value for the marital property that is within the range of expert opinion provided the fact-finder reached his own conclusion through an independent review of the evidence. *Id.* The trial court, or in this case the referee, "has a duty to make findings sufficient to inform the parties of the reasoning underlying [his] conclusions and to provide for effective appellate review," *Sewall v. Snook,* 687 A.2d 234, 236 (Me.1996) (quotation marks omitted). We, however, "will assume that the [referee] found all the facts necessary to support [his] decision when neither party has filed a motion for specific findings of fact and conclusions of law." *Id.*

 [¶ 11] With regard to Maple Grove Nursing Home, Inc., the referee calculated the marital equity in Maple Grove by considering the expert testimony of Stephanie Rice and Norman Gosline, and by reviewing the value sheets for the corporation. The referee determined the value of stockholder equity in the corporation to be $2,500,000. Habrle did not file a motion for further findings of fact or conclusions of law, and we assume, as we must, that the referee made the necessary factual findings to support his decision. *Id.* Therefore, the trial court did not commit clear error in accepting the referee's report regarding the valuation of Maple Grove Nursing Home, Inc.

 [¶ 12] Furthermore, with regard to Lee Apartments, there was no error in failing to include the dedicated bank accounts associated with Lee Apartments in the valuation of that property. The referee separately determined the value of the marital equity in the real estate and the value of the marital equity in the accounts. Habrle does not dispute the calculation of either value, and both the equity in the real estate and the accounts were classified as marital property. The fact that the two values were calculated separately is not clearly erroneous.

## B. Division of Marital Property

[¶ 13] Habrle contends that the division of the marital property was not equitable. "We review the division of marital property and debt for an abuse of discretion." *Hess v. Hess*, 2007 ME 82, ¶ 15, 927 A.2d 391, 395 (quotation marks omitted). In a divorce proceeding, property of each spouse is set aside to that spouse, and the marital property is divided in proportion to what is just and equitable after consideration of all relevant factors. *Id.* (citing 19–A M.R.S. § 953(1) (2007)). Specifically, the referee should consider "[t]he contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker; [t]he value of the property set apart to each spouse; and [t]he economic circumstances of each spouse at the time the division of property is to become effective." 19–A M.R.S. § 953(1)(A)-(C). The statute does not require that all property be divided evenly, only that the division must be "just" considering the parties' circumstances. *Hess*, 2007 ME 82, ¶ 15, 927 A.2d at 395.

[¶ 14] In the referee's report, adopted by the court, the referee listed each piece of real estate, explained how the value of the property was determined, and determined what part of that value should be set aside to Habrle with regard to each individual piece of real estate. In setting aside the amount of the marital property to be awarded to Habrle, the referee placed great emphasis on the contribution that each party made to the marital property. *See* 19–A M.R.S. § 953(1)(A). Habrle argues that the referee ignored the other factors set out in section 953(1), namely the value set aside

to each spouse pursuant to section 953(1)(B), and the economic circumstances of each spouse at the time the division is to become effective pursuant to section 953(1)(C).

[¶ 15] Although the referee did not articulate all of the factors set out in section 953(1), with respect to the distribution of each individual piece of property, the referee's report as a whole does refer to all of the enumerated factors in section 953(1) and other relevant factors as well.[1] In making an award, it is better practice for the referee or trial court to provide a justification for the total award to each party in light of the factors enumerated in section 953(1), as opposed to giving piecemeal explanations of the division of equity in individual pieces of property. The failure to do so in this case, however, is more an issue of form than of substance, particularly because Habrle did not request findings of fact and conclusions of law. We conclude that the overall division was within the proper bounds of the referee's discretion.

## C. Spousal Support Award

[¶ 16] The referee awarded Habrle $100 per week in transitional support from October 19, 2001, until July 31, 2005, and $2000 per month in general support for a period of forty-eight consecutive months. Habrle presented evidence that indicated that his living expenses exceed his income, and argues that the judgment may require him to spend down his marital property. The referee explicitly found, however, that Habrle was "voluntarily underemployed" and that he had not made a concerted effort to find meaningful employment. In the absence of a motion for further findings of fact, and in light of the

---

1. In dividing the equity in Maple Grove Nursing Home, Inc., the referee refers to 19–A M.R.S. § 953(1)(A), (B), (C) (2007). Although referenced with respect to the equity in the corporation, the reasoning is applicable to all property. The referee also states other relevant factors, such as, the parties kept their finances separate throughout the marriage.

above findings, we can assume that the referee found that Habrle is capable of supporting himself and has failed to do so. *See Sewall*, 687 A.2d at 236.

[¶ 17] Furthermore, in determining the amount of the spousal support award, the referee explicitly considered the factors listed in 19–A M.R.S. § 951–A(5) (2006) and individually assessed each factor.[2] The referee's findings with respect to the individual factors are supported by the record, and the referee's award of spousal support was within his discretion.

D. Attorney Fees

 [¶ 18] In a divorce judgment, one party may be ordered to pay the other's attorney fees "based on the parties' relative financial ability to pay the costs of litigation as long as the award is ultimately fair under the totality of the circumstances." *Carter v. Carter*, 2006 ME 68, ¶ 22, 900 A.2d 200, 205 (quotation marks omitted). We review an order regarding attorney fees for an abuse of discretion. *Id.*

 [¶ 19] The referee *could* have awarded attorney fees to Habrle based on Brown's superior financial position. His failure to do so, however, does not amount to an abuse of discretion. *See id.* ¶ 23, 900 A.2d at 205. In *Carter*, in which there was a disparity in the parties' financial positions, we determined that the trial court had not abused its discretion in failing to award attorney fees given the wife's anticipated promotion and access to rental income and assets. *Id.* Similarly, Habrle, as a result of the divorce judgment, has significant assets from which he can pay his own attorney fees.

The entry is:

Judgment affirmed.

2. Title 19–A M.R.S. § 951–A(2)(A) states: "General support may be awarded to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." The factors the court should consider when determining an award of spousal support are:

A. The length of the marriage;
B. The ability of each party to pay;
C. The age of each party;
D. The employment history and employment potential of each party;
E. The income history and income potential of each party;
F. The education and training of each party;
G. The provisions for retirement and health insurance benefits of each party;
H. The tax consequences of the division of marital property, including the tax consequences of the sale of the marital home, if applicable;
I. The health and disabilities of each party;
J. The tax consequences of a spousal support award;

K. The contributions of either party as homemaker;
L. The contributions of either party to the education or earning potential of the other party;
M. Economic misconduct by either party resulting in diminution of marital property or income;
N. The standard of living of the parties during the marriage;
O. The ability of the party seeking support to become self-supporting within a reasonable period of time;
P. The effect of the following on a party's need for spousal support or a party's ability to pay spousal support:
 (1) Actual or potential income from marital or nonmarital property awarded or set apart to each party as part of the court's distributive order pursuant to section 953; and
 (2) Child support for the support of a minor child or children of the marriage pursuant to chapter 63; and
Q. Any other factors the court considers appropriate.
19–A M.R.S. § 951–A(5) (2007).