2005 ME 62

**Joan P. WELLS**

v.

**Arthur G. POWERS et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 3, 2004.

Decided: May 25, 2005.

362

Andrew W. Sparks, Esq., Drummond & Drummond, LLP, Portland, for plaintiff.

Andrews B. Campbell, Esq., Campbell Law Offices, P.C., Waldoboro, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Joan P. Wells appeals from a judgment of the Superior Court (Cumberland County, *Warren, J.*) determining that the

boundary line between her property and the Powers' property falls generally south of the Stevens Corner Road, except for one point that touches the road. Wells asserts that the court erred by (1) basing its fact-findings on a survey that refers to two monuments rather than a survey provided by her that refers to seven monuments, and (2) determining that the boundary does not follow a straight line. Because the court's findings are supported by the record and its conclusions do not reflect an error of law, we affirm.

## I. GOVERNING LEGAL PRINCIPLES

▆▆▆ [¶ 2] Review of the issues in this case is guided by the following general principles that apply to resolution of boundary line location disputes. In such cases, determination of the boundary, as ascertained from a deed, is a question of law that we review de novo. *Wallingford v. Kennedy*, 2000 ME 112, ¶ 15, 753 A.2d 493, 497. Determination of where the boundary lies on the surface of the earth is a question of fact that we review for clear error. *Id.* A finding of fact is clearly erroneous when: (1) no competent evidence supporting the finding exists in the record; (2) the fact-finder clearly misapprehended the meaning of the evidence; or (3) the force and effect of the evidence, taken as a whole, rationally persuades us to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case. *Estate of Deschenes*, 2003 ME 35, ¶ 11, 818 A.2d 1026, 1030.

▆▆▆ [¶ 3] In resolving boundary disputes, there is a general rule of construction that identified monuments prevail over courses and distances, where such are indicated in deeds,[1] but this rule of construction is subject to fact-findings of the trial court that, if supported by the record, may support a result inconsistent with the general rule of construction. *Wallingford*, ¶ 18, 753 A.2d at 497–98; *McGrath v. Hills*, 662 A.2d 215, 218 (Me.1995). Further, a trial court is "free to depart from the rules of deed construction where following them would lead to absurd results manifestly inconsistent with the intention of the parties." *Kinney v. Cent. Me. Power Co.*, 403 A.2d 346, 350 (Me.1979); *see also Wallingford*, 2000 ME 112, ¶ 18, 753 A.2d at 497–98; *Proctor v. Hinkley*, 462 A.2d 465, 472 (Me.1983) (concluding that a boundary line leaving little or no lake frontage was absurd and inconsistent with other provisions in the description).

▆▆▆ [¶ 4] Finally, no matter how property in a deed is described, a deed may convey only property that was owned by the grantor. *Calthorpe v. Abrahamson*, 441 A.2d 284, 287 (Me.1982).

## II. CASE HISTORY

[¶ 5] In 1948, the Powers' property was owned by Stevens, and the Wells' property, to the south of the Powers' property in the Town of Harpswell, was owned by Benson. A 1948 plan prepared for the Bensons described the location of their property, indicating the boundary with the Stevens' property marked by the remains of a stonewall and drill holes. The boundary indicated on the plan appeared to meet the Stevens' property six-to eight-feet south of a road now known as the Stevens Corner Road. The line south of the Stevens Corner Road provides the Stevens–

---

1. In deed construction, "boundaries [are] controlled in descending order of priority by monuments, courses, distances and quantity." *Wallingford v. Kennedy*, 2000 ME 112, ¶ 18, 753 A.2d 493, 498. There is no issue of quantity here.

Powers property with a small area of direct access to water on Cards Cove.

[¶ 6] The 1948 plan includes a way leading from the Stevens Corner Road into the Benson property at a point south of the area in dispute here. This way appeared to provide access from the Benson property to the Stevens Corner Road.

[¶ 7] In 1948, the Benson property was transferred, by deed, to Skolfield. The Benson to Skolfield deed made no mention of the Stevens Corner Road. Instead it described the boundary with the Stevens' property by reference to the 1948 plan and to a line marked by an iron pin and drill holes at certain distances. The 1948 deed described the property line as crossing a road at two points that are removed from and unrelated to the line in dispute here. This road described in the 1948 deed may be the way, south of the area in dispute here, drawn on the 1948 plan. This is the only road referenced in the 1948 deed.

[¶ 8] In 1960, there was apparently some reconstruction regarding the Stevens Corner Road that may have involved some widening of the road. The documents incident to this activity refer solely to the Stevens–Powers property. They include no reference to the Benson–Skolfield property, suggesting that the road crossed the Stevens–Powers property without touching the Benson–Skolfield property.

[¶ 9] In 1999, the Benson–Skolfield property was transferred by deed to Wells. The transfer deed does not refer to the line described in the 1948 Benson–Skolfield deed that referenced the 1948 plan. Instead, it identifies the northern boundary of the transferred property as the edge of the Stevens Corner Road.

[¶ 10] After purchasing the property, Wells began using a woods road off the straight section of the Stevens Corner Road through the Powers' property to access her property. After Powers obstructed that access, Wells brought this action. Based on her deed from Skolfield and a 1999 survey, Wells claimed ownership of property to a line bordering the Stevens Corner Road.[2]

[¶ 11] After trial, the trial court found that the Skolfield to Wells deed could not convey to Wells more real estate than Skolfield owned, that Skolfield owned to a line as described in the 1948 Benson to Skolfield deed and that, except at one point where the parties agree that a drill hole was found bordering the Stevens Corner Road, Powers owned a narrow strip of property south of the Stevens Corner Road. The trial court observed that the boundary it found led to "a highly inequitable result, especially if it ultimately results in barring Wells from all road access to her land."

[¶ 12] Despite this observation, the court did not conclude that its findings and application of the rules of deed construction led to a result "manifestly inconsistent with the intention of the parties." *See Wallingford*, 2000 ME 112, ¶ 18, 753 A.2d at 498; *Kinney*, 403 A.2d at 350. To determine intent, the Court looked beyond the competing surveys offered by Wells and Powers and focused on the 1948 deed and survey, finding that:

> The 1948 Benson deed denotes an intent to convey the "premises known as the Amasa S. Benson farm" and refers to a plan prepared in July 1948 by H.I. and

---

**2.** Wells also asserted a right to use the woods road to access her property based on claims of adverse possession or prescriptive easement, but those claims were not pursued on appeal following the trial court's adverse ruling on those claims. Wells also asserted tres- pass, and Powers counterclaimed for trespass. The trial court awarded Wells $850 in damages for trespass to her property but otherwise essentially ruled against the parties on the trespass claims. Those matters were not pursued on appeal.

E.C. Jordan Engineers, a copy of which was introduced in evidence as Exhibit 7. Moreover, although the record does not contain any deeds in plaintiff's chain of title preceding the 1948 Benson deed, there is other evidence in the form of a 1974 court decree (Exhibit 19) that indicates the intent of the Skolfields to use the monuments and courses set forth in the October 1948 Benson deed and the July 1948 Jordan survey as the northern boundary of the property now owned by Wells.

[¶ 13] Accordingly, the court found that the property conveyed in 1948 was that identified by connecting the drill holes that had been found, which left the Wells' property meeting the Stevens Corner Road only at the point of the one identified drill hole that was agreed to be a monument in the 1948 deed.

[¶ 14] The court also found that:

[T]he road now known as the Stevens Corner Road has been in existence in one form or another since the turn of the century. If the northern boundary of the Benson property was intended to follow or intersect that road, there should be some mention of that road in the 1948 Benson deed and the 1948 Jordan plan should show that road as a monument. Instead the 1948 Jordan plan shows Stevens land occupying an area south of the existing Stevens Corner Road and north of the Benson boundary. Finally, the pertinent records relating to the layout of the public road now known as the Stevens Corner Road (Exhibit 16) do not mention Benson's land at all and do not support the proposition that the roadway was intended to follow the boundary between Benson's land and Steven's land.

## III. CONCLUSION

[¶ 15] The fact that the Wells–Powers property line, as identified by the court, appears closer to the Stevens Corner Road than the six-to eight-feet indicated in the 1948 survey may be attributable to improvements or widening of the Stevens Corner Road in 1960 or at other times since 1948. The closer proximity of the Stevens Corner Road to the Wells' property does not operate to transfer title from Powers to Wells of that portion of the Powers' property, no matter how narrow, that remains south of the Stevens Corner Road. By describing the property line as the edge of the Stevens Corner Road in the 1999 deed, the Skolfields could not convey more than they had. *Calthorpe*, 441 A.2d at 287. What they had in 1999 was limited to what they received in 1948 through the deed referencing the 1948 plan and describing the boundary found by the court, without reference to the Stevens Corner Road.

[¶ 16] While the trial court may have observed that the result was "inequitable," it did not conclude that the result was manifestly inconsistent with the intention of the parties' 1948 predecessors in title. It is the intent of the parties to the 1948 transaction that governs the location of the line that they drew. Accordingly, the trial court appropriately determined the location of the boundary by identifying the boundary as the line described in the 1948 deed and indicated in the 1948 survey plan. Evidence in the record supports the trial court's findings locating the boundary on the surface of the earth by reference to the drill holes and a line between the Powers' property and the Stevens' property that, except for one point, is south of the Stevens Corner Road.

The entry is:

Judgment affirmed.