2008 ME 157

### Susan V. NIXON

v.

### Thomas S. NIXON.

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 1, 2007.

Decided: Oct. 9, 2008.

---

Thomas G. Ainsworth, Esq., Michael F. Vaillancourt, Esq., Ainsworth, Thelin, Chamberlain & Raftice, P.A., South Portland, ME, for Susan V. Nixon.

Charlene Hoffman, Esq., South Portland, ME, for Thomas Nixon.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

Dissent: ALEXANDER, J.

CLIFFORD, J.

[¶ 1] Susan V. Nixon appeals from a divorce judgment entered in the District Court (Portland, *Powers, J.*) on her complaint against Thomas S. Nixon. Susan contends that the court erred in calculating transitional and general spousal support to be paid to her by Thomas, in valuing the marital home and assigning its debt, and in failing to award her attorney fees associated with the divorce. Because the spousal support awarded by the court is inadequate, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] The court made the following findings, which are supported by competent record evidence.[1] Susan and Thomas

---

1. Susan's appeal to us challenges only those aspects of the divorce judgment awarding spousal support, valuing the marital home, assigning to her the expenses for the marital

Nixon were married on June 25, 1982. They have three children, only one of whom—their fifteen-year-old daughter—is still a minor.

[¶ 3] Both parties are in their mid–40s and are high school graduates. Thomas has been the primary wage earner for the family, and has worked full-time in the area of information technology for the past twenty years, earning approximately $45,000 per year. He receives health insurance as an employer-provided benefit.

[¶ 4] Susan has had primary responsibility for taking care of the children and the home, but has engaged in some part-time employment in the area of property management periodically over the years, earning about $13,000 per year. She is currently working toward her bachelor's degree, and expects to obtain her degree sometime around mid- to late–2008. The court found that although "[i]t is unclear what [Susan] will do [after she graduates]," she does expect to work full-time; "she clearly has enhanced income prospects at that time"; and she "should be self-supporting shortly thereafter with the assistance of child and some spousal support."

[¶ 5] Both parties suffer from anxiety, depression, and sleep problems, but both are "medically able to work regular hours."[2] Although Susan will no longer be able to obtain health insurance coverage through Thomas's employment, Thomas can continue to provide coverage for their minor daughter through that employment-related policy.

[¶ 6] The parties purchased their marital home in August of 2003 for $223,000.

Their current mortgage balance is $171,000, with a monthly payment due of $1450. Although the home was valued at $281,000 eight months prior to the divorce hearing, based on changes to the local real estate market, the home's fair market value at the time of the divorce was $270,000. Thus, the parties have approximately $99,000 of equity in the marital home, less the costs of sale, yielding a net equity of around $90,000.

[¶ 7] In 2005, Susan filed a complaint for divorce against Thomas in the District Court on the ground of irreconcilable differences. Thomas counterclaimed for divorce. While the divorce was pending, Thomas paid an agreed amount of child support to Susan until a final judgment was issued. The parties also agreed that Susan could withdraw $1250 per month from the escrow account containing the proceeds from the sale of a separate parcel of marital property in order to pay the mortgage on the marital home, and that Susan could withdraw $10,000 from the escrow account to purchase a vehicle.

[¶ 8] Following a hearing, the court entered a divorce judgment dated November 21, 2006. The court awarded shared parental rights, pursuant to Susan and Thomas's agreement, and awarded Susan $139.96 per week in child support. In addition, the court awarded Susan transitional support of $300 per month until June 15, 2008, and $150 per month in general support for an additional year, until July 15, 2009, when all spousal support will cease.

[¶ 9] The court also ordered the sale of the marital home and equal division of its

home pending its sale, and denying her requested attorney fees. The discussion of the court's factual findings is therefore limited to those facts relevant to these grounds for appeal.

2. Susan's brief and testimony reflect that she attempted suicide in 2005. The court made no findings to that effect, however, other than to mention that she "had a two-week mental illness hospital stay in May 2005."

proceeds, based on Susan's inability to afford the home and Thomas's wish that it be sold. Pending sale of the property, the court awarded Susan exclusive possession of the home, but also ordered that she be "solely responsible for its related debt, including, but not limited to, the mortgage, repairs, taxes, and otherwise." The court found the mortgage payment to be $1450 per month, the real estate taxes to be roughly $291 per month, and the fuel oil expense to be about $350 per month. These expenses total $2091 per month. The court further divided the parties' marital and nonmarital property, and other debts.

[¶ 10] Susan filed this appeal after the court denied her subsequent motion to amend the judgment, filed pursuant to M.R. Civ. P. 59(e), in which she sought additional spousal support and attorney fees.

## II. DISCUSSION

[¶ 11] Susan first contends that the court erred in calculating both the transitional and general spousal support to be paid to her by Thomas. She argues that the amount of spousal support awarded prevents her from being able to obtain health insurance and precludes her from being able to afford her continued college studies, and that the court imposed improper time limitations on her spousal support award, relying on mere speculation rather than evidence of her future career and income prospects. Susan does not challenge the court's other factual findings underlying its award of spousal support. Thus, we review only the award of spousal support itself to determine whether the court exceeded its discretion in fashioning the award. *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793, 795.

[¶ 12] The court awarded Susan $300 per month in transitional support for a period of approximately one and a half years, until June 15, 2008. Transitional spousal support is awarded for "transitional needs," such as "[s]hort-term needs resulting from financial dislocations associated with the dissolution of the marriage" or "[r]eentry or advancement in the work force, including, but not limited to, physical or emotional rehabilitation services, vocational training and education." 19-A M.R.S. § 951-A(2)(B) (2007).

[¶ 13] Following the expiration of the transitional support, the court awarded Susan general support of $150 per month for an additional year, until July 15, 2009. The purpose of general support is "to provide financial assistance to a spouse with substantially less income potential than the other spouse so that both spouses can maintain a reasonable standard of living after the divorce." 19-A M.R.S. § 951-A(2)(A) (2007).

[¶ 14] Neither the transitional nor the general spousal support awarded to Susan adequately serves the statutory purposes for which it is intended. The sum of $300 per month in transitional support is inadequate to sustain Susan's short-term needs as she finishes her degree work, particularly given the assignment of all marital home expenses to her, and in light of her continuing mental health issues and loss of health insurance she previously had through Thomas's employment. Further, although the court found that Susan is working toward her bachelor's degree and expects to graduate and become fully employed "partway through the year 2008," it is not clear precisely what work Susan will do upon her graduation, or what her income will be. A short-term general support award that is premised on the expectation that the payee spouse will receive an undergraduate degree within a few years should be sufficient in its amount and duration to account for the

time it generally takes a recent college graduate to successfully enter the workforce and become self-supporting. *See Potter v. Potter*, 2007 ME 95, ¶¶ 3, 9, 926 A.2d 1193, 1195, 1196 (affirming an award of general support of $160 per week for five years to be paid by a spouse who earned approximately $50,000 per year to a spouse expected to earn her undergraduate degree in two and a half years).

[¶ 15] An award of spousal support depends on the circumstances of the parties involved in the divorce. The court, however, failed to adequately take into consideration all of Susan and Thomas's circumstances in fashioning Susan's award in this case. Thomas's earnings are fairly modest, but they are sufficient to provide Susan greater support than $150 per month in light of Susan's significant mental health issues, her loss of health insurance as a result of the divorce, her lesser current earnings, the speculative nature of her future earnings, and the amount of expenses assigned to her and for which she will be responsible.

[¶ 16] As to Susan's other contentions, because we vacate the judgment, we remand to allow the trial court to reexamine all income issues, including the assignment of marital debt for the home pending its sale, and attorney fees. We note, however, that the court's valuation of the marital home is a factual finding, and is supported by competent record evidence.

The entry is:

Judgment vacated and remanded to the District Court for further proceedings consistent with this opinion.

ALEXANDER, J., dissenting.

[¶ 17] I respectfully dissent. The District Court heard and decided this matter after a contested trial. At that trial, the court was able to observe the parties, their demeanor and their presentations of evidence and gained impressions of the parties, and the sincerity of their positions, that cannot be replicated in the cold record of evidence on appeal. *See State v. Patterson*, 2005 ME 26, ¶ 16, 868 A.2d 188, 192–93. Because we respect the capacity of the trial court to gain the impressions upon which it makes its fact-findings from both the record and the appearances of the parties before it, we deferentially review the trial court's fact-findings. *See Wells v. Powers*, 2005 ME 62, ¶ 2, ¶ 873 A.2d 361, 363. We vacate the fact-findings only when there is no competent evidence to support the findings. *Id.* We vacate discretionary decisions only when there is a demonstrated abuse of discretion. *See Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074, 1077–78.

[¶ 18] Our deferential standard of review applies to spousal support awards just as it applies to review of all other trial court fact-based decision-making. Recently we have observed that "[w]e review a court's award of spousal support for an abuse of discretion.... The underlying factual findings upon which a court bases an award of spousal support are reviewed for clear error and will be sustained 'if there is any competent evidence in the record to support them.'" *Manning v. Manning*, 2008 ME 143, ¶ 3, 956 A.2d 102, 103. The Court's opinion recognizes that we are reviewing the trial court's spousal support award in this case only "to determine whether the court exceeded its discretion in fashioning the award," (citing *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793, 795). Such a review is narrow and deferential. *See Pettinelli*, 2007 ME 121, ¶ 11, 930 A.2d at 1077–78. Here, we are not giving the trial court the deference it is due.

[¶ 19] Our law provides that, in considering a request for spousal support, the

court should consider the "income history *and income potential* of each party." 19–A M.R.S. § 951–A(5)(E) (2007) (emphasis added). Thus, by statute, Susan Nixon's post-graduate income potential was an appropriate consideration. The trial court properly evaluated the income potential that might be achieved with a college degree expected within a year. Other factors the court could consider include the education and training of each party, section 951–A(5)(F), and the ability of a party seeking spousal support to become self-supporting within a reasonable period of time, section 951–A(5)(O). Among the statutory factors to be considered, no one factor is dispositive, with the trial court, not this Court, deciding the appropriate emphasis to be given to each factor. *Coppola v. Coppola*, 2007 ME 147, ¶ 23, 938 A.2d 786, 793.

[¶ 20] Pursuant to section 951–A(5)(E) and (O), the trial court could properly disbelieve Susan Nixon's claims of present and future difficulties in earning income. *See Dionne v. LeClerc*, 2006 ME 34, ¶ 15, 896 A.2d 923, 929 (court may disbelieve witnesses even if testimony is not contradicted). It could recognize that Susan's claims were undercut by the fact that she anticipated receiving a bachelor's degree from the university this year. It could consider all of those facts and the other evidence presented in determining whether to award spousal support and the amount and length of time that spousal support should be paid. Here the trial court *did* award spousal support.

[¶ 21] Transitional spousal support may be awarded for transitional needs including "[s]hort-term needs resulting from financial dislocations associated with the dissolution of the marriage" or "[r]eentry or advancement in the work force, including, but not limited to, physical or emotional rehabilitation services, vocational training and education." 19–A M.R.S. § 951–A(2)(B). The court awarded Susan Nixon $300 a month for approximately a year and a half from the date of the divorce judgment. This award of transitional support was based on the finding that Susan Nixon was working toward her bachelor's degree and that she expected to graduate and become fully employed sometime during this year. The court could reasonably assume that Susan Nixon's earning potential with a degree would be substantially higher than her earning potential without a degree and that employment at a good salary could be anticipated sometime this year. Accordingly, the award of $300 a month in transitional support served the exact purposes of the transitional support award option of the statute.

[¶ 22] In determining the $300 a month amount of transitional support, the court appropriately considered Thomas Nixon's ability to pay, recognizing his relatively modest earnings and his other significant expenses, including child support. *See* 19–A M.R.S. § 951–A(5)(B), (P) (2007). Notably, the $300 a month transitional support award is only $100 a month less than the $400 per month award that Susan Nixon requested as general support. Further, the court could have reasonably concluded that once the marital home was sold, as was anticipated, Susan Nixon's living expenses would decrease significantly.

[¶ 23] Thus, in awarding Susan Nixon an amount close to what she requested, and in light of the other factors the court could have had in mind in making the award, it is not possible to conclude, as the Court does, that the trial court abused its discretion. The end result of the combination of the spousal support award and the child support award was to increase Susan Nixon's available income from $13,000 per year to $24,000 per year and to reduce Thomas Nixon's available income from

$45,000 per year to $34,000 per year. The remaining distance between the two is not great. The trial court found that this income gap would be reduced or eliminated after Susan Nixon's college graduation. The trial court's action does not reflect an abuse of discretion. By overturning the trial court, the Court is ignoring the finding regarding income potential, and it is holding that existing income differences must be split evenly between the parties to achieve a proper spousal support award. Both of those positions are contrary to the law discussed above.

[¶ 24] Following the expiration of the transitional support award, Susan Nixon was awarded general support in the amount of $150 per month from July 2008 to July 2009. In this calculation, the trial court expressly considered Thomas Nixon's relatively modest earnings and his other obligations, including child support. The award of general support was appropriately designed to support Susan Nixon an additional year after her college graduation while adjusting to a full-time work situation with a college degree. Regardless of the length of a marriage, the law does not establish any presumption in favor of a general spousal support award for any particular minimum length of time. The key factors to evaluate in reaching a decision on general support are the parties' relative incomes and, as discussed above, their income potential and ability to become self-supporting.

[¶ 25] The Court justifies overturning the trial court's decision and requiring payment of a higher level of spousal support in "light of Susan's significant mental health issues," "her lesser current earnings," and other factors, including "the speculative nature of her future earnings." The record reflects, and the trial court found, that both parties suffer from mental health problems "requiring ongoing thera-py and medication." The trial court's findings indicate that it considered all of the factors stated in the Court's opinion in making its award and concluding that Susan "is likely to increase her earnings substantially once her schooling is done and should be self-supporting shortly thereafter with the assistance of child and some spousal support." What the Court is actually doing in its opinion is second-guessing the trial court's decision on the weight and significance to attach to particular evidence. *See Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592, 600 (appellate review of factual findings limited to review of the record to determine if evidence exists to support trial court's factual conclusions).

[¶ 26] In awarding general spousal support for a relatively short period, the trial court properly concluded that Susan Nixon would have adequate earnings after receiving her college degree and that, at that point, the parties, except for their mutual parenting obligation, should go their separate ways such that each could get on with their life without the participation of the other. The trial court had to evaluate many objective factors and many subjective factors in reaching its result. Those subjective factors cannot be evaluated on a cold record nor can they be second-guessed with an abuse of discretion standard of review.

[¶ 27] I would give the trial court the deference it is due and affirm the judgment of the District Court.