2011 ME 99

Mary WALSH

v.

TOWN OF MILLINOCKET.

Supreme Judicial Court of Maine.

Argued: June 14, 2011.

Decided: Sept. 8, 2011.

Melissa A. Hewey, Esq. (orally) Kaighn Smith, Esq., Elek A. Miller, Esq., Drummond Woodsum, Portland, ME, for the Town of Millinocket.

Arthur J. Greif, Esq. (orally) Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, ME, for Mary Walsh.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] In this case, a jury has found, twice, that a Town Councilor exhibited discriminatory animus towards Mary Walsh because she had engaged in statutorily-protected conduct, and that this discriminatory animus was a cause or a motivating factor for the Millinocket Town Council's decision to eliminate Mary Walsh's position and thus terminate her employment with the Town. Walsh contends that discriminatory animus expressed by one member of the Town Council can be found to be a cause or a motivating factor for an adverse employment action approved by a vote of a Town Council. The Town contends that the lack of evidence of discriminatory animus by any other member of the Town Council insulates the Town from liability in Walsh's discrimination action, despite the jury's findings of causation.

[¶ 2] Resolution of these divergent views of the law of causation in a discrimination action is the central issue in this appeal. We conclude that our established jurisprudence for discrimination actions, placing the burden on the plaintiff to prove, by a preponderance of the evidence, causation of an adverse employment action by a discriminatory act or discriminatory animus, is sufficient to govern such actions. No change in a plaintiff's burden of pleading or proof is required when it is alleged that a discriminatory act or discriminatory animus of one or a minority of members of a multi-member decision-making body was a motivating factor for an adverse employment action.

I. APPEAL SUMMARY

[¶ 3] The Town of Millinocket appeals and Mary Walsh cross-appeals from the judgment and order of the Superior Court (Penobscot County, *Anderson, J.*) entered following a retrial at which the jury found that Walsh, the former Town Recreation Director, had engaged in activities protected by Maine's Whistleblowers' Protection Act, 26 M.R.S. 831–840 (2010),[1] when she reported to the Maine Department of Conservation unsafe conditions on Town-owned snowmobile trails, and that those protected activities were a substantial motivating cause for the Town's decision to

---

1. The Whistleblower's Protection Act prohibits employment discrimination when an "employee, acting in good faith, ... reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of ... any other individual." 26 M.R.S. 833(1)(B) (2010).

eliminate her position. The jury awarded Walsh $30,000 in compensatory damages, and, on issues left for the court, the court awarded Walsh back pay of more than $60,000, as well as attorney fees and costs.

[¶ 4] The Town argues that (1) it cannot be held liable on Walsh's claim because there is no dispute that the majority of the seven-person Town Council was not motivated by discriminatory animus when it voted to eliminate Walsh's position; and (2) the court's causation instruction was erroneous because it did not require the jury to find that Walsh's protected conduct was the substantial motivating factor for the votes of a majority of the Town Council. In her cross-appeal, Walsh contends that the court erred in (1) determining the amount of back pay to which she was entitled; (2) declining to order reinstatement to her position; and (3) refusing to award Walsh front pay until reinstatement to her former position was possible. We affirm the trial court's judgment.

## II. CASE HISTORY

[¶ 5] When a jury has found in favor of the plaintiff on her claim for employment discrimination, we review the facts in the light most favorable to the plaintiff. *See Sullivan v. Porter,* 2004 ME 134, ¶ 2, 861 A.2d 625; *Staub v. Proctor Hospital,* — U.S. —, 131 S.Ct. 1186, 1189, 179 L.Ed.2d 144 (2011).

[¶ 6] In 1993, Mary Walsh began working for the Town of Millinocket's recreation department. In 2000, she was promoted to recreation director. One of Walsh's responsibilities was to be the grant administrator for State grants to support maintenance of the Town's snowmobile trails. The Town contracted with the Twin Pines Snowmobile Club to maintain and groom the trails. To perform the grooming functions, Twin Pines utilized employees from New England Outdoor Center, a business owned and operated by Millinocket Town Councilor Matthew Polstein, who also served as Twin Pines' president.

[¶ 7] In the winter of 2004–2005, Walsh complained repeatedly about the condition of the snowmobile trails to both the Town Manager and Polstein. She asserted that the corners of the trails had been banked too high, that trail surfaces were "washboarded" (severely uneven), and that inadequate signage had been placed on the trails. Because Walsh believed that the Town and Polstein were not responding adequately to her concerns, she complained to a snowmobile division director within the Maine Department of Conservation. Polstein was aware of Walsh's contact with the Department of Conservation.

[¶ 8] In February 2005, Walsh had lunch with friends at a local restaurant. She told them that she was frustrated that Polstein was not taking her concerns seriously. Walsh also told her companions that she would not have a problem "calling the state on anyone who wasn't doing their job." Two days later, Walsh received an email from Polstein that read, in part, "Mary, you should be careful about how loud you talk when you're out on the town, talking town politics, i.e. eating at the [restaurant]! The walls always have ears in this town, as you should know."

[¶ 9] In March, outside the same restaurant, Polstein blocked the car in which Walsh was sitting with his car so that she could not leave. Polstein then shouted, "Mary, what did I tell you about having lunch at [the restaurant]?" Polstein asked Walsh what her problem was and became "visibly angry" when Walsh informed him that she had reported the trail maintenance problem to the Department of Conservation. As a result of these incidents, Walsh felt threatened and believed that

her job was in jeopardy, given Polstein's position as a Town Councilor.

[¶ 10] In May 2005, a proposal that would lead to the outsourcing of the Town's recreation services to another town was presented to the Town Council for a vote. At the council meeting, only one local citizen—Polstein's wife—spoke in favor of the proposal, which would eliminate Walsh's position entirely. Several citizens spoke against the proposal. On June 23, 2005, the Town Council voted four to three in favor of outsourcing; Polstein was a member of the majority. As a result of the vote, Walsh's position was eliminated.

[¶ 11] Walsh filed a complaint of discrimination with the Maine Human Rights Commission, pursuant to 5 M.R.S. 4611 (2008) and 26 M.R.S. 834–A (2010). After review, the Commission issued her a "right-to-sue" letter, pursuant to 5 M.R.S. 4612(6) (2010).

[¶ 12] In June 2007, Walsh filed a complaint against the Town in the Superior Court, pursuant to 5 M.R.S. 4621 (2010), claiming a violation of the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. 831–840. The Town filed a motion for summary judgment based on its claim that because only one councilor possessed discriminatory animus against Walsh, the council's decision could not be causally connected to that discrimination. The court denied the motion.

[¶ 13] A jury trial began on September 8, 2008. On September 10, 2008, the jury returned a verdict for Walsh and awarded her $25,000. After the verdict, the Town filed a motion for a new trial. The court granted the motion, concluding that it had erred in not allowing the Town to present testimony from the other members of the Town Council who had voted on the position elimination proposal.

[¶ 14] The second trial was held from August 17 to 20, 2009. The facts discussed above are derived from the evidence presented at the second trial. During the trial, as the Town prepared to present the other Town Council members to testify, Walsh offered to stipulate that the other Town Council members who voted on the position elimination proposal were free of any discriminatory animus at the time. Walsh's stipulation offer was not accepted by the court, and two other Town Council members testified. No evidence was presented indicating that any Town Councilor, other than Polstein, held any discriminatory animus toward Walsh for her engaging in the protected conduct of reporting her concerns about the condition of the Town snowmobile trails to the Department of Conservation.

[¶ 15] After the conclusion of the evidence and closing arguments, the court instructed the jury. On the liability issue the court advised the jury that Walsh had to prove that three elements of her discrimination claim against the Town were established to the preponderance of the evidence, a more likely than not, standard of proof. For the first element, the court advised the jury that Walsh had to prove that she engaged in conduct that was protected by the WPA. For the second element, the court advised the jury that Walsh had to prove that the Town subjected her to an adverse employment action. While issues regarding these elements were contested at trial, no issue is raised on appeal contesting the jury's findings regarding these first two elements. Thus, the propriety of the court's instructions and the jury's findings on these points is assumed for purposes of this appeal.

[¶ 16] Causation was the principal issue at trial and is the principal issue on appeal. On the causation question, the court instructed the jury that Walsh had to prove

"a causal connection between her protected conduct and the adverse employment action that she suffered." Describing the question for the jury further, the court advised: "There is a causal connection if Ms. Walsh's protected conduct was a substantial, even though perhaps not the only, factor motivating Ms. Walsh's dismissal." The court continued, "Even if more than one factor affected the decision to eliminate Ms. Walsh's position, this third element is satisfied if one factor is her protected conduct ... and, in fact, it made a difference in determining whether to eliminate the position." The court concluded, "If Ms. Walsh would not have been dismissed but for protected conduct[ ] under the Whistle Blower Protection Act, the existence of other reasonable grounds of discharge does not relieve the employer from liability."

[¶ 17] The language of the court's instruction tracked language we had suggested in *Wells v. Franklin Broadcasting Corp.* to address the causation issue, there in an age discrimination case, when there may be evidence of multiple causes for an employment action:

> the proper inquiry is whether age was a substantial, even though perhaps not the only, factor motivating the employee's dismissal.... [T]he jury must be instructed that even if more than one factor affects the decision to dismiss an employee, the employee may recover if one factor is his age and in fact it made a difference in determining whether he was to be retained or discharged. If an employee would not have been dismissed but for his age, the existence of other reasonable grounds for his discharge does not relieve the employer from liability under the applicable statutory provisions.

403 A.2d 771, 773 (Me.1979).

[¶ 18] Following completion of the instructions, the court invited the parties to address concerns about the instructions at sidebar. There, the Town reiterated its request, previously presented in a proposed instruction, that the jury be instructed that in order to find that Walsh's protected conduct caused the decision to eliminate her position, the jury had to find that her protected conduct "was a substantial motivating factor—in other words that it made a difference—in the decision of a majority of the Town Councilors." The court declined the Town's request to amend its instructions to require the jury to find that a majority of the Town Councilors had a discriminatory animus in order to find causation proven. The jury was then recessed to begin deliberations.

[¶ 19] As had occurred in the previous trial, the jury returned a verdict for Walsh, this time awarding her $30,000 in compensatory damages. The Town moved for a judgment as a matter of law; the court denied the motion.

[¶ 20] Following a hearing on damages and several motions to amend the judgment, the court awarded Walsh $30,000 in compensatory damages, reflecting the jury verdict, an additional $61,232 in back pay plus interest, $71,864.50 in attorney fees, and more than $3,400 in costs and expenses. The court declined to award Walsh the full amount of back pay she requested because it found that she did not mitigate her damages in 2008. The court also declined to order Walsh's reinstatement or award Walsh front pay. The Town timely appealed, and Walsh timely filed her cross-appeal.

## III. LEGAL ANALYSIS

### A. Decision-maker Liability for Improper Motives of an Individual

[¶ 21] The United States Supreme Court recently held that an employer can

be found liable for employment discrimination based on the discriminatory animus of an employee who intentionally influenced, but did not make, the ultimate employment decision. *Staub v. Proctor Hosp.,* —— U.S. ——, 131 S.Ct. 1186, 1189, 1194, 179 L.Ed.2d 144 (2011). *Staub* involved a claim of discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C.S. 4301–4334 (LexisNexis 2008 & Supp.2010). In *Staub,* as in the instant appeal, the plaintiff did not contend that the employment decision-maker, there a company vice president, held any discriminatory animus that caused the adverse employment action. *Staub,* 131 S.Ct. at 1190. However, the Court held that the discriminatory animus of other corporate employees was enough to support a finding of liability if the jury could have found that the actions of those with discriminatory animus influenced the decision-maker and thus became a motivating factor leading to the adverse employment action. *Id.* at 1192–94.

■ [¶ 22] Although *Staub* involved a private employer and action by a single decision-maker, rather than a public employer and action by a multi-member council, *Staub* addressed principles directly applicable to this appeal. In *Staub,* the Court addressed the so-called "cat's-paw" theory of liability. *Id.* at 1190 & n. 1. Normally, a decision-maker's adverse employment action that is free of discriminatory animus is a subsequent, independent cause that insulates the decision-maker from liability for a prior act of an agent that was motivated by discriminatory animus. However, the "cat's-paw" theory provides that if the plaintiff demonstrates that the agent with an improper motive influenced the ultimate decision-maker's decision, the agent's improper motive may be imputed to the ultimate decision-maker,

thereby establishing a causal link between the protected activity and the adverse employment action. *Id.* at 1192. *See also Roberson v. Alltel Info. Servs.,* 373 F.3d 647, 653 (5th Cir.2004).

[¶ 23] The Town of Millinocket argues that because only one member of the seven-member Town Council was proven to have exhibited discriminatory animus against Walsh, the Town cannot be held liable for discrimination, as a majority of the Council's members did not discriminate against Walsh. Thus, the Town argues, the court erred when it denied the Town's motion for judgment as a matter of law pursuant to M.R. Civ. P. 50(b).

■ [¶ 24] To prevail on a claim of unlawful retaliation pursuant to the WPA, Walsh had to prove, and the jury had to find, that: (1) she engaged in activity protected by the WPA; (2) she experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Stanley v. Hancock Cnty. Comm'rs,* 2004 ME 157, ¶ 11, 864 A.2d 169; *DiCentes v. Michaud,* 1998 ME 227, ¶ 14, 719 A.2d 509. Because the Town does not dispute the first two elements of the WPA analysis, the only issue on appeal is that of causation, specifically, whether Walsh's complaints to the State concerning the condition of the Town's snowmobile trails were a "substantial factor" or a "motivating factor" in the elimination of her position. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Stanley,* 2004 ME 157, ¶¶ 12, 24, 864 A.2d 169.

[¶ 25] In *Wells* we held that the proper inquiry on an employment discrimination claim is whether the discrimination itself—in this case retaliation against an employee who engaged in protected conduct pursuant to the WPA—"was a substantial, even though perhaps not the only, factor moti-

vating the employee's dismissal." *Wells,* 403 A.2d at 773; *see also Maine Human Rights Comm'n v. City of Auburn,* 408 A.2d 1253, 1268 (Me.1979).

[¶ 26]   We have not explicitly addressed the circumstances under which discriminatory animus of one or a minority of members of a multi-member local council or commission can be found to be a "substantial factor" or a "motivating factor" causing an adverse employment action approved by the multi-member body.   The Town contends that we should adopt the quantitative approach of the United States Court of Appeals for the Eleventh Circuit, which requires that in order for a plaintiff to recover, she "must show that the municipal body itself acted with a discriminatory purpose or motive."   *See Matthews v. Columbia Cnty.,* 294 F.3d 1294, 1297 (11th Cir.2002).   In *Matthews,* the court, concluding that improper motives of one member of a three-member majority was insufficient to impute improper motive and thus causation to an entire decision-making body, held that "[b]ecause policymaking authority rests with the Commission as an entity, the County can be subject to liability only if the Commission itself acted with an unconstitutional motive."   *Id.* The court concluded that it was improper to hold the County liable based on the improper motives of only one commissioner.   *Id.* at 1298.

[¶ 27]   The Eleventh Circuit's approach appears to not fully appreciate the decision-making dynamics of local councils and commissions, which can be influenced by the improper but unstated views of a member with a particular interest in a matter to whom other members may defer in collegial discussions.   As the First Circuit has observed, "[B]ecause discriminatory animus is insidious and a clever pretext can be hard to unmask ... it may be overly mechanistic to hold [a plaintiff] to strict proof of the subjective intentions of a numerical majority of council members."   *Scott–Harris v. City of Fall River,* 134 F.3d 427, 438 (1st Cir.1997), *rev'd on other grounds sub nom.   Bogan v. Scott-Harris,* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998).

[¶ 28]   In a case involving a unanimous vote of a five-member board on which one member had articulated a discriminatory animus as a basis for his vote, the Second Circuit, allowing a cause to proceed, noted: "[I]t is possible that, even if a majority of the individuals that participate in the decision lack unconstitutional motives, the unconstitutional intentions of a minority of those involved can taint the ultimate outcome."   *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 786 (2nd Cir.2007).

[¶ 29]   The Eleventh Circuit's holding in *Matthews* may also be inconsistent with the Supreme Court's holding in *Staub* that an adverse employment action taken by a corporate decision-maker with no improper motive may be actionable if the decision-maker's adverse employment decision is influenced or promoted by other corporate agents who have acted with a discriminatory animus.   *See* 131 S.Ct. at 1192–94; *see also Hunter v. Underwood,* 471 U.S. 222, 228, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (commenting that "[p]roving the motivation behind official action is often a problematic undertaking" when the action is taken by a multi-member government body).

[¶ 30]   The trial court in the present case employed the "motivating factor" or "substantial factor" causation standard articulated in *Staub* and in our prior opinions in *Stanley* and *Wells.*[2]   The jury

**2.**   The court's instruction in this case, consistent with *Wells,* also used "but for" language, but in a different and broader context than an opinion of the United States Court of Appeals

could, and apparently did, infer from the evidence in the record that the termination of Walsh's job would not have occurred but for Polstein's discriminatory animus. Polstein, because of his relationship to the snowmobile club and the trail grooming contractor, may have been viewed with significant deference by other councilors who may have had a lesser interest in the issue. In addition, Polstein was the deciding vote. Without his vote, the tally would have been split evenly, resulting in the resolution not passing and Walsh keeping her job.

[¶ 31] An improper motive or discriminatory animus of one member of a multi-member council or commission may create an actionable claim against the governmental entity if a plaintiff proves, and the jury finds, that the improper motive or discriminatory animus was a motivating factor or a substantial cause for an adverse employment action taken against a plaintiff who is a member of a protected class or who has engaged in a protected activity. In this case, the plaintiff proved and the jury found such a causal connection between Polstein's discriminatory animus and the adverse employment action taken by the Town. "[W]e will not substitute our judgment as to the weight or credibility of the evidence for that of the fact-finder if there is evidence in the record to rationally support the trial court's result." *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003. With the jury having been instructed in accordance with the law as we have articulated it over the past three decades, and there being evidence in the record to support the jury's verdict, the trial court did not err in denying the Town's motion for a judgment as a matter of law.

### B. Instructions to the Jury on Causation

[¶ 32] The Town of Millinocket contends that the trial court erred when it instructed the jury on causation, because it did not instruct the jury that it had to find that Walsh had proven that a majority of the Town Council had acted with a discriminatory animus in order to render a verdict for Walsh. This is, in essence, and as conceded by the Town at oral argument, the same argument as the Town's first argument concerning the legal standard to be applied to the causation issue. Our reasoning above, addressing the legal standards to be applied in reviewing the actions of a multi-member council or commission, applies equally to this argument.

### C. Remedies of Back Pay, Front Pay, and Reinstatement

[¶ 33] Walsh argues that the court erred when it reduced the amount of back pay it awarded when it found that Walsh "no longer made reasonable efforts to locate suitable employment because she unduly limited the scope of her search." Walsh further contends that the court inappropriately shifted the burden of proof for damage mitigation to her, rather than to the Town.

[¶ 34] We have held that "back pay awarded as relief for unlawful employment discrimination is to be reduced by actual earnings on another job during the pertinent period, or by whatever amount [the victim] could with reasonable diligence have earned during that time." *Maine Human Rights Comm'n v. Dep't of Corrections*, 474 A.2d 860, 869 (Me.1984). The

---

for the Sixth Circuit cited by the Town to support its argument. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir.2006). The Sixth Circuit held that "where improperly motivated members supply the de-

ciding margin, the board itself is liable." *Id.* However, it is the influence of those with discriminatory animus, not the vote count, that is, in the final analysis, the proper focus of the inquiry for the causation question.

employer has the "burden to prove that the employee could have mitigated her damages by finding other employment." *LeBlond v. Sentinel Serv.*, 635 A.2d 943, 945 (Me.1993). We will uphold an award of back pay or a limitation on the amount of back pay "absent clear error by the grant of the award or an abuse of discretion in the amount awarded." *Id.*

[¶ 35] In the present case, the Town demonstrated that after Walsh moved to Lincoln in 2007, she did not apply for similar recreation-related positions in the Bangor area that were advertised in the *Bangor Daily News*. The trial court found that, in 2008, she "no longer made reasonable efforts to locate suitable employment because she unduly limited the scope of her search, which impaired her ability to apply for reasonable employment opportunities," and accordingly concluded that she failed to mitigate her damages. The court differentiated Walsh's situation from the situation presented in *Maine Human Rights Commission v. Dep't of Corrections*, 474 A.2d at 869, because, it reasoned, "there is a huge difference between expecting a person from Springvale to accept employment in Skowhegan [a commute or move of nearly two-and-one-half hours] and expecting a person from Lincoln to pursue employment in greater Bangor [a commute or move of approximately one hour]." Considering our deferential standard of review, the trial court's findings on the back pay issue are supported by the record and are not clearly erroneous.

[¶ 36] Walsh argues that because reinstatement, when possible, is the preferred remedy in the context of employment discrimination, the trial court erred when it did not order her reinstatement to the position of recreation director. Walsh offers that her reinstatement is not impossible, as ongoing hostility between her and

the Town was not proven and that the two-year contract that effectively removed her from her position expired in July 2009, which would have allowed her to retake her position with the Town.

[¶ 37] We review a trial court's determination concerning the feasibility of reinstatement for clear error to the extent that the determination relies on findings of fact and for an abuse of discretion to the extent that the determination relies on evaluative factors and choices. *See Wells v. Powers*, 2005 ME 62, ¶ 2, 873 A.2d 361 (explaining clear error review); *Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074 (explaining abuse of discretion review).

[¶ 38] The trial court found that after Walsh's position was eliminated in July 2005, it has not existed. Instead, the Town entered into an outsourcing contract with the Town of East Millinocket that has remained in effect to consolidate recreation services between the towns. In addition to the court's finding that the position no longer exists, the trial court determined that it would not order reinstatement "because it is predictable that the employer-employee relationship in this small workplace will remain hostile."

[¶ 39] The trial court did not clearly err or abuse its discretion when it determined that reinstatement would be impractical or infeasible. Similar to the situation in *Mercier v. Town of Fairfield*, 628 A.2d 1053, 1056 (Me.1993), the trial court did not abuse its discretion in refusing to order that Walsh be reinstated to a position that no longer exists.

[¶ 40] Walsh finally contends that, should reinstatement be impossible, she is entitled to front pay, which the trial court did not award to her. Walsh suggests that because front pay is the closest approximation to reinstatement a court can award in a discrimination case, front

pay should have been awarded to her in this case.

[¶ 41] We review the trial court's decision to reward front pay or not for an abuse of discretion. *Id.* at 1056. "In the employment context, . . . reinstatement or, if reinstatement is not feasible, front pay, is a proper remedy for a deprivation of procedural due process unless it is shown that the discharge was otherwise justified." *Id.*

[¶ 42] In its order, the trial court did not make "a front pay award" "[b]ecause the Court's findings with regard to mitigation also apply to front pay." This decision was not an abuse of discretion and will be affirmed.

The entry is:

Judgement affirmed.