MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 66
Docket:        Ken-14-398
Submitted
  On Briefs:   February 26, 2015
Decided:       May 14, 2015

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

MOLLY G. (LACHANCE) JANDREAU

v.

DANIEL L. LACHANCE

JABAR, J.

[¶1]   Molly G. (LaChance) Jandreau appeals from a divorce judgment entered in the District Court (Waterville, *Dow, J.*) dissolving her marriage to Daniel L. LaChance.  Because we agree with Jandreau's contention that the court abused its discretion in denying her request for spousal support and attorney fees, we vacate and remand for reconsideration.

## I.  BACKGROUND

[¶2]   Jandreau and LaChance married in February 1999, and their daughter was born in June 2000.  In March 2013, Jandreau filed a complaint for divorce. The court found that Jandreau has an annual income of $14,212, which consists entirely of Social Security Disability Insurance (SSDI) benefits.  It found that LaChance has an annual income of $87,896.

[¶3]  In April 2013, the parties consented to the entry of an interim order requiring LaChance to pay Jandreau $192 per week in child support.  After participating in mediation, the parties agreed that LaChance would also pay Jandreau interim spousal support of $1,600 per month, commencing June 13, 2013. On May 29, 2013, the court entered an order reflecting the parties' agreement.

[¶4]  LaChance paid the June spousal support payment in full and paid $50 in July.  He then ceased making spousal support payments and fell behind in his child support payments.  At trial, Jandreau testified that LaChance's failure to pay the ordered support payments rendered her unable to meet her daily living expenses, causing her to incur overdraft fees and to borrow from payday lenders and family.

[¶5]  In October 2013, Jandreau filed a motion for contempt based upon LaChance's nonpayment of his interim support obligations.  *See* M.R. Civ. P. 66(d).  On November 15, 2013, the court held a consolidated trial on the contempt motion and the issues that had not been resolved through mediation in the divorce proceeding.  Jandreau filed an updated child support affidavit and financial statement in advance of the trial as required by M.R. Civ. P. 108(d)(4).  LaChance did not.

[¶6]  At trial, the parties testified to the following facts.  Jandreau is disabled due to anxiety and post-traumatic stress disorder, has multiple medical conditions,

takes ten prescription medications, and sees both a counselor and a psychiatrist. She was forced to leave her most recent job because of her anxiety. At the time of trial, she had not worked for a full year or earned more than $10,000 through employment in any of the previous ten years.

[¶7] In addition to her own SSDI benefits, Jandreau receives $592 in monthly dependent SSDI benefits for the parties' daughter and $70 each month in food stamps. During the marriage, Jandreau was covered under LaChance's employer's health insurance policy, received MaineCare, and spent $104 per month on a supplemental Medicare plan. She did not incur out-of-pocket expenses for visits with her counselor or psychiatrist. After the divorce, Jandreau will no longer be covered by LaChance's health insurance and will be rendered ineligible for MaineCare by the child support order. Because of her disability, she will remain entitled to Medicare, but will have to purchase increased Medicare coverage at an additional monthly cost of $130. She may also incur out-of-pocket expenses for visits with her counselor and psychiatrist. Even without including these additional outlays, the evidence indicates that Jandreau's expenses exceed her income by about $1,000 every month.

[¶8] LaChance is a trained machinist and has been operating in that capacity since 1986. Based on LaChance's paystub for the week ending June 2, 2013, the court found that he had "a weekly gross income of $1,623.21," not including

4

bonuses. Extrapolating this weekly income to an annual amount and including a bonus of $3,489, the court found that LaChance's annual income is $87,896.

[¶9] Jandreau requested an award of $1,200 in monthly spousal support. She also asked the court to award her attorney fees, arguing that the award was justified (1) by her inability to pay the fees herself, (2) by LaChance's failure to file an updated financial statement, and (3) as a remedial contempt sanction for LaChance's refusal to comply with the court's interim spousal support order. At the time of trial, Jandreau's attorney fees totaled $9,410.54.

[¶10] In its judgment, entered in August 2014, the court ordered LaChance to pay Jandreau $230 in weekly child support pursuant to the 19-A M.R.S. § 2006 (2014) support guidelines. The judgment gave Jandreau the right to claim the parties' daughter as a dependent for tax purposes, but allowed LaChance to buy the dependency exemption from her at a price equal to the amount by which Jandreau's tax liability would be decreased if she claimed the exemption. The judgment allocated the marital home and its mortgage to LaChance, providing him with equity of approximately $25,500. The judgment allocated to LaChance marital personal property worth more than $7,500, and allocated to Jandreau marital personal property valued at $300. The judgment assigned LaChance responsibility for nearly $10,000 of the parties' non-mortgage marital debts, and assigned Jandreau responsibility for marital debts in excess of $14,500. To

equalize the division of marital assets and liabilities, the court ordered LaChance to pay Jandreau $18,837. With this payment included, the property division left each party with a positive net worth of approximately $4,400.

[¶11] The judgment provided that "in light of the child support ordered herein," "the tax consequences of the award of the [dependency] exemption to [Jandreau]," "the property distribution," and "the incomes of the parties," "no spousal support shall be paid now or in the future." It also stated, without explanation, that the parties would be responsible for their own attorney fees.

[¶12] In addressing the contempt issue, the court found by clear and convincing evidence that LaChance "violated the order to pay spousal support when he at all times had the power to comply." As a "sanction," the court ordered that LaChance's obligation to pay the interim spousal support would remain in effect.[1] The court found that LaChance owed Jandreau thirteen months of support at $1,600 per month ($20,800), less his $50 payment to her in July 2013, and issued a writ of execution against LaChance in Jandreau's favor in the amount of $20,750.

---

[1] However, the court also noted that it could not "adjust the amount of spousal support subject to the contempt motion."

## II. DISCUSSION

[¶13]  On appeal, Jandreau contends that the court abused its discretion by denying her requests for spousal support and attorney fees.  LaChance elected not to participate in this appeal and did not file a brief.

A.    Spousal Support

[¶14]  We review a divorce court's decision regarding spousal support for an abuse of discretion.  *Buck v. Buck*, 2015 ME 33, ¶ 6, --- A.3d --- (per curiam).  In so doing, we consider whether competent evidence supports the court's factual findings, viewing the record and any reasonable inferences that may be drawn therefrom in the light most favorable to the court's judgment.  *Id.* ¶ 5.

[¶15]  Although the trial court has considerable discretion in deciding whether and in what amount to award spousal support, and we review its decision with deference, we will vacate a decision that exceeds the bounds of the court's discretion.  *Potter v. Potter*, 2007 ME 95, ¶ 7, 926 A.2d 1193; *see Payne v. Payne*, 2006 ME 73, ¶ 11, 899 A.2d 793.  The court's discretion regarding an award of spousal support is defined by the factors set forth in 19-A M.R.S. § 951-A(5) (2014).  Levy, *Maine Family Law* § 8.2[1] at 8-11 (8th ed. 2013).  These factors include the length of the marriage; the ability of each party to pay; the parties' income and employment history and potential; the parties' provisions for health insurance; the parties' health and disability status; the contributions of either party

as homemaker; the ability of the party requesting support to become self-supporting within a reasonable period of time; the effect of a child support order on the payee's need for spousal support and the payor's ability to pay spousal support; and a catchall consideration: "[a]ny other factors the court considers appropriate." 19-A M.R.S. § 951-A(5).

[¶16] In determining an award of spousal support, the trial court must consider all of the statutory factors, but may rely on some factors to the exclusion of others. *Carter v. Carter*, 2006 ME 68, ¶ 20, 900 A.2d 200. If the court denies spousal support after a contested hearing, it must issue an order stating the factors on which it relied in reaching its decision. 19-A M.R.S. § 951-A(1)(D) (2014).

[¶17] Here, the court's judgment cites four factors on which it relied in reaching its decision to deny Jandreau's request for support: (1) its award to Jandreau of $230 in weekly child support, (2) its allocation of the dependency tax exemption for the parties' daughter, (3) the parties' incomes, and (4) its distribution of the parties' marital assets and liabilities. As discussed below, neither these factors court nor the record itself support a complete denial of Jandreau's request for spousal support.

1. Factors Cited in the Judgment

[¶18] The first factor that the court relied upon—ordered child support—is relevant to Jandreau's need for spousal support and to LaChance's ability to pay

8

that support, and was thus appropriately considered in determining spousal support. *See* 19-A M.R.S. § 951-A(5)(P)(2); *Fitzpatrick v. Fitzpatrick*, 2006 ME 140, ¶ 11 n.2, 910 A.2d 396. The court did not make findings regarding the effect of the child support order on LaChance's ability to pay spousal support, but did find that, during the five months preceding the trial, LaChance had the ability to pay spousal support of $1,600 per month. The judgment is likewise devoid of findings regarding the effect of the child support order on Jandreau's need for spousal support. However, the only evidence of Jandreau's financial condition demonstrates that her income will be not be sufficient to meet her living expenses even during the three years that the child support order remains in effect.[2]

[¶19] The second factor that the court relied upon—allocation of the income tax dependency exemption—is relevant to an award of spousal support insofar as it affects the parties' finances. Due to the progressivity of the income tax, income tax exemptions increase in value, up to a certain point, as income increases. *See Cross v. Cross*, 363 S.E.2d 449, 459 (W. Va. 1987); *see also Stevens v. State Tax Assessor*, 571 A.2d 1195, 1196 (Me. 1990). Jandreau, with an annual income of $14,212, receives a minor benefit from the dependent tax exemption; LaChance, with an annual income of nearly $88,000, would benefit significantly from the

---

[2] The child support order will automatically terminate in June 2018, when the parties' daughter turns eighteen, unless she has not graduated, withdrawn, or been expelled from high school, in which case it will terminate when she turns nineteen. *See* 19-A M.R.S. § 1653(12) (2014).

exemption, even after purchasing it from Jandreau.[3] The dependency exemption allocation thus improves LaChance's financial position vis-à-vis Jandreau.

[¶20] The third factor that the court relied upon was the parties' incomes. *See* 19-A M.R.S. § 951-A(5)(E). LaChance earns nearly $88,000 annually–more than six times the $14,212 per year that Jandreau receives in personal SSDI benefits. Though the parties' incomes alone are not dispositive of the need for spousal support, a difference of this magnitude provides no support for the court's decision to deny Jandreau's request for spousal support.

[¶21] The fourth and final factor that the court relied upon was the division of the parties' marital assets and liabilities.[4] Pursuant to that division, each party received an equal share of the property accumulated during the marriage.

[¶22] In *Bonnevie v. Bonnevie*, we concluded that an award of temporary spousal support to the wife was inadequate when the husband earned almost four times as much as the wife, the court had equally distributed the parties' marital property, and the wife would be forced upon termination of spousal support to consume her share of the marital property in order to maintain her standard of

---

[3] The court's allocation of the exemption allows LaChance to "buy" the exemption from Jandreau at a price equal to the amount by which her tax liability would be decreased if she claimed the exemption.

[4] The court's division of the parties' marital property may well be a consideration that falls into the 19-A M.R.S. § 951-A(5)(Q) (2014) catchall factor, because spousal support and the distribution of marital property are related components of an equitable divorce judgment. *See Ketchum v. Ketchum*, 1998 ME 62, ¶ 6, 707 A.2d 803.

living. 611 A.2d 94, 94-95 (Me. 1992). In *Sewall v. Snook*, we vacated a judgment denying the wife spousal support when the husband earned more than three times as much as she did, the court had awarded the wife a larger share of the marital assets, and the record indicated that the wife's ordinary living expenses would exceed her income from employment and child support payments. 687 A.2d 234, 235-36 (Me. 1996).

[¶23] Here, the court's equal property distribution did nothing to ameliorate the inequality in the parties' economic positions. An equal property division simply does not provide a basis for denying spousal support when, as here, the parties have very disparate earning power and there is a significant disparity between one party's income and expenses. In such cases, an equal property distribution, and even a distribution that favors the spouse with less income, is not alone sufficient "to ensure that the overall financial result of the divorce is equitable." *Id.* at 236.

[¶24] Jandreau did not move for further findings pursuant to M.R. Civ. P. 52(b). Under these circumstances, we would ordinarily assume that the court found that Jandreau was able to meet her needs without spousal support. *See Sorey v. Sorey*, 1998 ME 217, ¶ 12 n.5, 718 A.2d 568. In this case, however, under any standard of review, no matter how deferential, the evidence provides no

support for a determination that Jandreau's income will be sufficient to meet her living expenses.

2. Factors Not Cited in the Judgment

[¶25] Because the four factors on which the court explicitly relied to deny spousal support do not provide an adequate foundation for that denial, we search the record to determine whether any competent evidence otherwise supports the court's judgment. *See Buck*, 2015 ME 33, ¶ 5, --- A.3d ---. Even when viewed in the light most favorable to the court's judgment, the fully developed record before us contains no evidence regarding any of the remaining statutory factors that would support the court's denial of Jandreau's request for spousal support. *Cf. id.* ¶¶ 5, 7-8 (affirming an award of spousal support when the record, though incomplete, contained some support for the court's judgment).

[¶26] To the contrary, the record suggests that the court's denial of spousal support resulted from a failure to adequately consider all of the parties' circumstances and all relevant statutory factors. *See Nixon v. Nixon*, 2008 ME 157, ¶ 15, 957 A.2d 101. For example, the judgment does not discuss Jandreau's (1) contributions as homemaker during the parties' fourteen-year marriage, (2) health and disability, (3) provisions for health insurance, (4) income and employment potential, or (5) ability to become self-supporting within a reasonable period of time. *See* 19-A M.R.S. § 951-A(5)(A), (D)-(E), (G), (I), (K), (O). Each

12

of these factors indicates that Jandreau was entitled to some amount of spousal support.

B.    Attorney Fees

[¶27]  At trial, Jandreau requested attorney fees (1) in the nature of spousal support; (2) as a sanction for LaChance's failure to file an updated financial statement; and (3) pursuant to her contempt motion, as a sanction for LaChance's failure to comply with the interim spousal support order.

[¶28]  The court's authority to award attorney fees derives from statutes and court rules.  Levy, *Maine Family Law* § 9.1 at 9-1 (citing *Strater v. Strater*, 159 Me. 508, 511, 196 A.2d 94 (1963)).  The court may order one party to pay another party's reasonable attorney fees for participation in any family proceeding, 19-A M.R.S. § 105(1) (2014), and may in a divorce proceeding award attorney fees "in the nature of support," 19-A M.R.S. § 952(3) (2014).  In a family proceeding, the court may award attorney fees as a sanction for a party's failure to file a child support affidavit without good cause.  M.R. Civ. P. 108(f)(2)(C).  Further, in a plenary remedial contempt proceeding, the court may award reasonable attorney fees if it finds that one party's contempt has injured the other party.  M.R. Civ. P. 66(d)(3)(C).

[¶29]  We review the court's decision not to award attorney fees for an abuse of discretion.  *See Bond v. Bond*, 2011 ME 54, ¶ 9, 17 A.3d 1219.  In deciding

whether to award attorney fees, the court "has discretion to consider all factors that reasonably bear on the fairness and justness of the award." *Smith v. Padolko*, 2008 ME 56, ¶ 17, 955 A.2d 740 (quotation marks omitted). Relevant factors include the parties' relative capacity to absorb the costs of the litigation and conduct by one party that increases the costs of the litigation. *See Miele v. Miele*, 2003 ME 113, ¶¶ 15-16, 832 A.2d 760.

[¶30] Here, LaChance makes significantly more than Jandreau, was found to be in contempt of court for failing to pay interim spousal support, and failed to file an updated child support affidavit without good cause. It was an abuse of discretion for the court to deny Jandreau's request for attorney fees.

### III. CONCLUSION

[¶31] The record reflects a great disparity in the parties' earning power and reveals that Jandreau's income without spousal support will be inadequate to meet her ordinary living expenses even while she is receiving child support. Because the court's decision to deny spousal support is not supported by the factors on which the court explicitly relied and the record does not provide support for findings capable of otherwise sustaining that decision, we vacate the portion of the judgment denying spousal support and remand for reconsideration. On remand, the court should also reconsider Jandreau's request for attorney fees.

The entry is:

> The portions of the judgment denying spousal support and attorney fees are vacated. The remainder of the divorce judgment is affirmed. Remanded for further proceedings consistent with this opinion.

---

**On the briefs:**

Daniel W. Marra, Esq., Marden, Dubord, Bernier & Stevens, Waterville, for appellant Molly G. (LaChance) Jandreau

Daniel L. LaChance did not file a brief